THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GLENN HIPKINS, Defendant-Appellant.

Third District    No. 79-164

Opinion filed June 17, 1981.—Rehearing denied July 15, 1981.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

David Zwicker, State's Attorney, of Aledo (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The defendant, Glenn Hipkins, appeals from his conviction, after jury trial, for murder, and from his sentence of from 50 to 100 years, on that conviction. He asserts on appeal: (1) that the trial judge abused his discretion in refusing to inquire of jurors, during the trial, as to the extent of their exposure to a radio news broadcast in which the prosecutor discussed the trial; (2) that the defendant's rights (against double jeopardy) were violated when the trial court, addressing the sentencing question, found that the defendant had knowledge that his acts created a strong possibility of death or great bodily harm, when the jury had been unable to make the same finding; and (3) that the sentence was excessive and should be reduced.

■■ ■ The pertinent facts in the record indicate that on September 1, 1977, defendant Hipkins, then age 19, and another youth decided to rob a gas station in Keithsburg. They had been drinking, taking pills, and smoking marijuana. Hipkins indicated to the other youth that he knew a gas station where it would be easy to steal the money because an old man was in charge, and he would not be able to identify them. The final plan was for the accomplice to drive into the gas station, keeping the old man busy with a fill-up, while Hipkins went into the station and took the money from the cash register. Proceeding thereon, the accomplice drove in to the station and told Frank LeHew, the 88-year-old station attendant, to fill it up. Meanwhile, Hipkins exited the car and went into the station. Hipkins found that the cash register was locked, and he was about to carry it off when LeHew entered the station. According to the defendant's confession, LeHew then picked up a chair, whereupon Hipkins pushed LeHew, knocking him to the floor. Hipkins then, while LeHew lay on the ground, kicked him three times, once in the face, once in the nose and once in the chest. He then grabbed LeHew's key chain, opened the cash register and took $230. He joined his accomplice in the car and they drove off, discarding the key chain along the way. LeHew was found, semiconscious, with serious bruises on his face and head, and was transported to the hospital by ambulance. Upon arrival, he was unconscious, suffering

from a severe head injury. X rays revealed a large skull fracture, which had crossed a major artery, and had resulted in a hematoma and swelling. He died within a week, with the cause of death listed as primarily due to head injuries. It was the defendant's testimony at trial that they did not intend to harm LeHew seriously, and that he did not realize the extent of force he used in kicking LeHew as he lay on the floor. The jury, based upon the evidence, found the defendant guilty of murder, in that he caused the death of Frank LeHew while committing a robbery. Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3).

Following the conviction, the State requested a hearing on the death penalty. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(d).) The death penalty hearing was then held, and in the first part of the bifurcated hearing, the jury was asked to determine whether the defendant had intentionally, or with knowledge that the acts which caused the death created a strong possibility of death or great bodily harm, killed Frank LeHew. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(6).) Arguments of counsel were made but no evidence was heard. The jury returned a verdict indicating that it could not unanimously find that the factor in aggravation existed. Thereafter the matter was set for sentencing hearing before the court. Ill. Rev. Stat. 1979, ch. 38, par. 9—1(g).

Evidence at the subsequent sentencing hearing indicated that Hipkins was a high school dropout with a poor employment record. He had a history of drug use and several prior convictions, two for misdemeanor theft and two for burglary. Also in aggravation the State presented the testimony of William Bolis, the 73-year-old jailer of Mercer County Jail. Bolis testified that during the defendant's confinement he brought a television set into the cellblock in which Hipkins and other inmates were housed. He entered the cellblock and set the television on the floor. As he did so, Hipkins reached through the bars and struck him over the head with a metal bar removed from the shower stall. Hipkins told Bolis to give him the keys. Bolis went to the door, got the keys and locked the door. Bolis then sought help after fending off another blow from Hipkins. Bolis required several stitches to close the wound on his head.

The State recommended a sentence of from 100 to 300 years, if the defendant chose to be sentenced under the old sentencing law, and a sentence of natural life, if he chose to be sentenced under the new sentencing law. Defense counsel argued that the natural life sentence was not a possible sentence, under the new act, for the reason that the predicate aggravating factor (knowledge that his actions created strong possibility of death or great bodily harm) had been decided in the defendant's favor at the death penalty hearing. Defense counsel requested the court to rule on whether it would consider the statutory aggravating factor in sentencing. The court ruled that it had authority to consider the

aggravating factor despite the fact that the jury could not unanimously agree on its existence in the case. The court further found that the aggravating factor existed and that the defendant did act with knowledge that his actions created a strong probability of death or great bodily harm.

The defendant then chose to be sentenced under the old sentencing law and a sentence of from 50 to 100 years was imposed. This appeal followed. Further factual development will be set forth, as required, within the discussion of the issues.

The initial issue raised is whether the court abused its discretion in refusing to inquire of the jurors as to whether they had been exposed to a radio interview given during the trial by the State's Attorney. During the State's case defense counsel informed the court that his office had received calls from unknown persons concerning a radio interview given by the prosecutor. According to the defense attorney, the callers had characterized the interview as "highly prejudicial" to the defendant. None of them related the specifics of the interview, however, and the defense was unable to obtain a tape recording of the interview as it had been destroyed and no written copy made. Defense counsel did assert that the interview was broadcast at a time when the court was not in session and the jurors could have thus heard it. Defense counsel requested that the court question the jurors to inquire if they had heard the broadcast. Prior to deciding how to proceed on the matter, the court indicated its desire to know the contents of the interview. Defense counsel had not supplied any substantive information, by way of affidavit or otherwise, as to the contents. The State's Attorney, who had given the interview, informed the court that the substance of the broadcast dealt with the stage and progress of the proceedings, including a recap of the State's first day evidence. He informed the court that nothing prejudicial was said during the broadcast. The court thereafter denied defense motion to examine the jurors on the issue, finding there was no good reason to do so and that such interrogation would only focus the juror's attention on the media. The defense now contends that the court abused its discretion in failing to inquire as to possible exposure by the jury to the broadcast.

The pertinent rules of law applicable to the issue were stated in *People v. Heller* (1971), 131 Ill. App. 2d 799, 801, 267 N.E.2d 685, wherein this court indicated that the question of whether a jury should be interrogated with respect to media coverage or comment rests in the exercise of the sound discretion of the trial judge.

> "It is the improper exercise of that discretion by the trial court that is error, not the refusal to interrogate the jury. (*People v. Murawski*, 394 Ill. 236, 68 N.E.2d 272; *People v. Cox*, supra.) As stated in the latter case:
>
>> 'This does not imply that every newspaper article published

during trial requires an interrogation of the jury. Its nature, content and prejudicial effect, if any, is to be resolved by the trial court in an exercise of sound discretion. The article must be produced and made a part of the record and its prejudicial effect, if any, first carefully explored by the trial court.' " (*People v. DeBartolo* (1975), 24 Ill. App. 3d 1000, 1007-08, 322 N.E.2d 251.)

It is also established that where a defendant claims prejudice from media presentations or comment, it is the defendant's burden to present the allegedly prejudicial material to the court, either by way of actual production or by sworn affidavit as to its contents. (*People v. Preston* (1978), 60 Ill. App. 3d 162, 178, 376 N.E.2d 299.) One court has held that an allegation of prejudice is insufficiently shown if supported only by the unsworn statement of defense counsel as to its contents. (*People v. Hill* (1975), 34 Ill. App. 3d 193, 339 N.E.2d 405.) We held in *People v. Heller* that failure by the defense to produce the allegedly prejudicial media material or to abstract its contents prevented review of the trial court's exercise of discretion. 131 Ill. App. 2d 799, 802.

■■ While we are aware that acquisition and presentation of the electronic media's programming is relatively more difficult than acquisition of material from the print media, such difference does not remove the burden of production from the defense when it claims that a particular broadcast was prejudicial. When asserting prejudice, it is incumbent upon the defense, absent extraordinary circumstances preventing such acquisition, to indicate the substance of the prejudice which it asserts. In this case, the defense presented no affidavit from any listener or from the news person who conducted the interview. In fact, the defense's only support for the conclusion that the broadcast was prejudicial was the asserted hearsay conclusions of anonymous callers to the defense counsel's office secretary. Such presentation was insufficient to require that the trial court interrogate the jurors as to the exposure they might have had to the broadcast. The only information before the court as to the contents of the broadcast were the statements by the State's Attorney concerning it. He indicated that the remarks he made covered only the stage and progress of the trial, and a recap of the first day's evidence. He stated that nothing prejudicial was stated. We have found that nonprejudicial news reports covering the progress of the trial and evidence before the jury do not interfere with a defendant's right to a fair trial. (*People v. Henderson* (1975), 39 Ill. App. 3d 502, 507, 348 N.E.2d 854.) In the instant case, there was nothing in the record to sufficiently indicate that the radio broadcast complained of contained prejudicial statements by the prosecutor. Absent that sufficient showing by the defense, we are unable to conclude that the trial court abused its discretion in refusing to interrogate the jurors on the

matter. We would also note, in passing, that each juror in the case had indicated, during *voir dire*, his exposure to media reports about the case. Each had stated his ability to maintain the presumption of innocence and judge the case on the evidence presented at trial. The focus of the decision to be made was further emphasized by the jury instructions and by defense counsel's final argument.

The next issue raised by the defense concerns the sentencing by the trial court. As indicated previously, the State requested a death penalty hearing in this case and the jury, pursuant to that request, heard arguments of counsel concerning the presence of aggravating factors justifying the death penalty. (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1(d), 9—1(g), 9—1(b).) Specifically, the jury was asked to decide whether Hipkins killed LeHew with the knowledge that his actions in kicking LeHew created a strong probability of death or great bodily harm. The jury was unable to unanimously conclude that the requisite knowledge was present, and it returned a verdict stating that it could not unanimously find that the factor in aggravation existed. Given their failure to find the aggravating factor, the trial court then proceeded with sentencing. After hearing matters in aggravation and mitigation, the court, pursuant to defense request, found that if the defendant were to be sentenced under the new sentencing law, it had the authority to consider the aggravating factor previously considered by the jury. It further found that the factor existed and that Hipkins had acted with the requisite knowledge. Thereafter, the defendant chose to be sentenced under the old sentencing law and he was given a term of from 50 to 100 years. The defense argues that because the jury, in the death penalty hearing, had found that the aggravating factor was *not present*, therefore, the trial judge was precluded, by collateral estoppel, from considering it at the subsequent hearing.

■■■ The essential problem with the estoppel argument advanced by the defense is the fact that the jury did not affirmatively find that the aggravating factor did not exist. Rather, the jury was unable to unanimously find that the factor did exist. From the record, then, all that can be concluded is that the jury was unable to reach a unanimous conclusion about the presence or absence of the aggravating factor. Thus there was never any conclusive decision by the jury on this factual issue sufficient to act as a bar by way of estoppel. While collateral estoppel applies to criminal proceedings, an essential predicate to its application is the presence of a valid and final determination of an issue of ultimate fact. (*People v. Ward* (1978), 72 Ill. 2d 379, 382, 381 N.E.2d 256.) So, even assuming, *arguendo*, that collateral estoppel or some variant thereof, would preclude a trial judge from finding the presence of an aggravating factor after a jury had conclusively decided its absence, in the instant case

there was no final and conclusive determination by the jury of the factual issue concerning the presence or absence of the aggravating factor of knowledge. The defense argues that the statutory language in section 9—1(g) (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(g)) transforms the lack of an affirmative finding on the question into an affirmative finding that the factor did not exist. We disagree. In applying collateral estoppel, the courts are obliged to look with "realism and rationality" in addressing the issue concerning which factual questions were actually decided previously, so as to act as a bar. (*People v. Ward* (1978), 72 Ill. 2d 379, 384, 381 N.E.2d 256.) The inquiry must be set in a practical framework and viewed with an eye to all the circumstances of the proceedings. (72 Ill. 2d 379, 384.) It is clear from the jury's verdict that it was unable to make an affirmative finding either way on the factual question of the defendant's knowledge. A strained construction of general statutory language will not transform such a failure to reach a finding into a finding so that the principles underlying estoppel will be applied in the instant case.

■■ ■ The final argument by the defense is that the 50 to 100 years sentence was excessive. Sentencing decisions are within the discretion of the trial courts and normally will not be tampered with by an appellate tribunal, absent an abuse of that discretion. In the instant case, the record indicated that Hipkins had four previous criminal convictions. The evidence also indicated that he committed a brutal and callous attack on a helpless elderly man, whom he had already pushed to the floor. Further, evidence in aggravation indicated that Hipkins, while incarcerated, attacked an elderly jailer with a metal bar in an escape attempt. The sentence imposed by the Circuit Court of Mercer County was justified on the record, and we find no abuse of discretion.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.