THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD SCAGGS, Defendant-Appellant.

First District (2nd Division) No. 80—1293

Opinion filed December 28, 1982.

George M. Zuhanelis, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond Brogan, and Bryan David Schultz, Assistant State's Attorneys, of

counsel), for the People.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant Ronald Scaggs was indicted for aggravated battery, attempted murder and armed violence predicated on the attempted murder count. Following a jury trial, defendant was found guilty on all counts and was sentenced to 10 years' imprisonment on only the attempted murder verdict. On appeal, defendant contends: (1) that the jury's verdict was against the manifest weight of the evidence; (2) that defendant was denied a fair trial due to prosecutorial misconduct during the trial; (3) that the trial court's refusal to grant defendant a continuance on the day trial was scheduled to begin was an abuse of discretion; and (4) that the jury was erroneously instructed as to an offense for which defendant was not charged. Because we find that defendant was denied a fair trial due to prosecutorial misconduct, we need not address the other issues raised in this appeal.

On April 22, 1979, at approximately 7:30 or 8 p.m., Arthur Brown, J. B. Daniels, Harry Gardner, Earnest Brown and Valentino were conversing in a parking lot adjacent to 2515 West Van Buren Street, Chicago, when defendant and Joe Weaver approached the group. Defendant and Gardner began to discuss a proposed drag race which had failed to materialize. The evidence is somewhat conflicting as to what happened next but it appears that defendant became annoyed with Gardner and said to him "get out of my face, old man." Two of the witnesses testified that at this point, defendant produced a gun. J. B. Daniels pushed Gardner to the ground stating, "Got a gun over here. Get out of the way." David Ball, the victim, walked up with his Cook County deputy sheriff's badge in hand and told defendant to drop the gun. All three witnesses who testified at trial stated that Ball did not have a gun in his hand, only the badge. Defendant fired two shots at Ball striking him in the right leg and left buttock. Defendant then turned and ran as Ball pulled out his own handgun, rose to his knees and began shooting at defendant. The other witnesses dove for cover during the shootout. After defendant had fled and the shooting stopped, the police were called. About three hours later, defendant turned himself in.

Defendant testified that Ball was the one who first pulled a gun. Defendant also testified that Ball did not have a badge in his hand as he approached and that he (defendant) was afraid that Ball was going to rob him. Defendant admitted firing the first shot but stated that Ball returned fire immediately.

Defendant contends that prosecutorial misconduct during cross-examination of defendant and during closing arguments served to deny defendant a fair trial. Defendant cites nine alleged points of error in support of this contention. Generally, alleged errors must be objected to at trial and specified in a post-trial motion in order to preserve them for appeal. (See *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233; 87 Ill. 2d R. 366(b)(2)(iii); Ill. Rev. Stat. 1981, ch. 110, par. 68.1(2).) In the instant case, defense counsel objected to only one of the alleged errors and he failed to specify these points of error in his post-trial motion. Nonetheless, we elect to review these alleged instances of prosecutorial misconduct under the plain error rule. (87 Ill. 2d R. 615(a).) We find that of the nine alleged points of error raised on appeal, five have merit, and that the cumulative impact of these errors served to deny defendant a fair trial.

■■ Defendant first cites as error the prosecution's line of questioning regarding the fact that defendant was living with a woman other than his wife. This type of questioning, which is designed to highlight defendant's sexual immorality is clearly improper. See *People v. Liapis* (1972), 3 Ill. App. 3d 864, 868, 279 N.E.2d 368.

■■ Defendant next cites as error the prosecution's repeated questioning concerning the frequency with which defendant carried a gun. This line of inquiry was not relevant to defendant's assertion of self-defense. A similar line of inquiry in *People v. Hicks* (1971), 133 Ill. App. 2d 424, 429-31, 273 N.E.2d 450, was held to be so improper and prejudicial as to deprive the defendant of a fair trial.

■■ Defendant next contends that the prosecution improperly questioned defendant about Joe Weaver, a witness who was never called to testify, and improperly commented in closing argument on defendant's failure to call that witness to testify. Generally, it is improper for the prosecution to comment on defendant's failure to present witnesses which are as accessible to the State as they are to the defendant. (*People v. Puente* (1981), 98 Ill. App. 3d 936, 948, 424 N.E.2d 775.) But where, as here, defendant is responsible for injecting the witness into the case and/or referring to efforts on his (defendant's) part to secure the witness, it appears to be proper to comment on defendant's failure to produce that witness. See *People v. Swift* (1925), 319 Ill. 359, 365-66, 150 N.E. 263; *People v. Mays* (1972), 3 Ill. App. 3d 512, 514-16, 277 N.E.2d 547.

■ The prosecutor, however, went beyond merely commenting on defendant's failure to call the witness. The prosecutor stated that the witness did not "show" because he would not "lie" for defendant. This comment was based on pure speculation and was extremely prej-

udicial.

■ Defendant also contends that the prosecutor misstated the law of self-defense in his closing argument. The test for self-defense is whether, in using the force that he did, defendant acted reasonably under the circumstances that confronted him at the time. (See Ill. Rev. Stat. 1979, ch. 38, par. 7—1.) The prosecutor stated in his closing argument that:

> "[t]he standard is reasonable men. I submit to you what goes on in that man's mind is it reasonable to begin with? Reasonable men don't carry guns to visit people in their homes. Reasonable men don't drag-race on the streets like teenagers. They don't bet like a teenager and carry guns with them and drink.
> You're going to measure it by what is reasonable to that. Reasonable men are the men and women that sit on juries like you, conscious of the community the standard of what you think is reasonable, not what he thinks is reasonable."

The prosecutor thus sought to divert the jury's attention from defendant's actions at the time of the shooting to an evaluation of defendant as a person. The jury was encouraged to consider matters irrelevant to self-defense, to wit: the fact that defendant regularly carried a gun, the fact that defendant drag raced and that defendant gambled and drank while carrying a gun. This argument was highly prejudicial and a clear misstatement of the law of self-defense.

■ Defendant next contends that the prosecution led the jury to believe that "reasonable doubt" was a mere *pro forma* detail. In his closing argument, the prosecutor stated:

> "Every defendant that has ever been convicted in this building in this country has been convicted beyond a reasonable doubt whether it is stealing a bicycle or committing a murder. It does not put this man on a pedestal. It is not some impossible thing floating up there in the air. It is a burden that is met every day."

This frequently used argument has been repeatedly held to be improper. See *People v. Martinez* (1979), 76 Ill. App. 3d 280, 285, 395 N.E.2d 86. See also *People v. Ayala* (1981), 96 Ill. App. 3d 880, 883-84, 422 N.E.2d 127; *People v. Hamilton* (1980), 80 Ill. App. 3d 794, 805, 400 N.E.2d 599.

■ We make no finding as to whether, individually, the instances of prosecutorial misconduct cited above warrant a reversal. We do find, however, that the cumulative impact of these instances of misconduct served to deny defendant a fair trial. See *People v. Weinger* (1981), 101 Ill. App. 3d 857, 866, 428 N.E.2d 924; *People v. Sepka*

(1977), 51 Ill. App. 3d 244, 255, 367 N.E.2d 138.

For the reasons stated above, we reverse the judgment of the trial court and remand for a new trial.

Reversed and remanded.

PERLIN and HARTMAN, JJ., concur.