Ex parte Calvin Loyd **PADGETT**, Relator.

No. 05–84–00125–CR.

Court of Appeals of Texas, Dallas.

May 22, 1984.
Dissenting Opinion May 23, 1984.

Jerry Birdwell, Dallas, for relator.

Charles M. Cobb, Carles C. Bailey, Mount Pleasant, for respondent.

**304**

ALLEN, Justice.

This appeal is taken from an order of Criminal District Court No. 5 which denied habeas corpus relief. The relator contends that the trial court erred by refusing to grant his pre-trial special plea of former jeopardy and by refusing to prohibit the State from seeking the death penalty in Cause No. F–88–86740–L. Appeal was brought to this court under the authority of *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex.Cr.App.1982) seeking reversal of the trial court's denial as well as a writ of prohibition preventing future consideration of the death penalty. We disagree, affirm the trial court's denial of habeas relief, and deny application for a writ of prohibition.

On May 10, 1982, three employees of the Pizza Hut restaurant in Mt. Pleasant were found brutally stabbed, beaten, and shot to death. The relator, Calvin Loyd Padgett, was subsequently indicted by a grand jury in Titus County on three separate capital murder allegations. Cause Nos. 10,082, 10,083, and 10,084 alleged that Padgett intentionally caused the death of Howard McClaflin, Shirley Thompson, and George Landram respectively, while committing robbery.

On August 22, 1983, trial commenced in Titus County on the allegations contained in Cause No. 10,082. On September 20, 1983, the jury returned a verdict of guilty of capital murder. The trial proceeded to the punishment phase. Pursuant to TEX. CODE CRIM.PROC.ANN. art. 37.071 (Vernon 1981 and Vernon Supp.1984), the jury was presented with three special issues for determination. The jury answered special issues No. 1 and No. 3 in the affirmative. The jury failed to answer special issue No. 2 in either the affirmative or negative. In accordance with article 37.071(e), the trial court sentenced the defendant to confinement for life.

On November 7, 1983, Cause No. 10,083 was called for pre-trial hearing in Titus County. Defendant's motion for a change of venue was granted and the cause was transferred to Dallas County. This action was assigned Dallas County Cause No. F83–86740–L in Criminal District Court No. 5.

On February 1, 1984, the relator filed a pre-conviction writ of habeas corpus in the trial court with a special plea of former jeopardy. Padgett sought an order directing that the prosecution be restrained from seeking the death penalty in Cause F83–86740–L. Specifically, Padgett maintained that the jury's inability to answer special issue No. 2 in the previous trial amounted to a negative finding. Padgett asserts, therefore, the State was collaterally estopped from again litigating that particular issue under the rule originally advanced in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The relief sought was denied and Padgett appeals from the denial.

Whether a non-finding by a jury in a capital murder trial during the punishment phase collaterally estops the prosecution from seeking the death penalty at subsequent prosecution involving a different victim murdered at the same transaction appears to be a matter of first impression in Texas.

Article 37.071 provides in pertinent part:

(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

\* \* \* \* \* \*

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; ...

\* \* \* \* \* \*

(d) The court shall charge the jury that:

(1) it may not answer any issue "yes" unless it agrees unanimously; and

(2) it may not answer any issue "no" unless 10 or more jurors agree.

(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. If the jury returns a negative finding on *or is unable to an-*

*swer any issue submitted* under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life....[1]

The Court of Criminal Appeals examined the impact of article 37.071 in *Molandes v. State*, 571 S.W.2d 3, 4 (Tex.Cr.App.1978). In *Molandes*, the court held the provisions of the statute allowing the issues to be negatively answered with the concurrence of only ten jurors did not violate the defendant's right to a unanimous verdict under TEX. CONST. art. V, § 13 or TEX. CODE CRIM.PROC.ANN. art. 36.24 (Vernon 1981). In affirming, Judge Odom opined:

> The provision here under attack, however, inures to the defendant's benefit in that it allows a favorable verdict resulting in life imprisonment to be returned on agreement of ten jurors, whereas the position urged by appellant would require a defendant in such circumstances to face the ordeal of a retrial and the possibility of a death-producing verdict by a new jury. We hold the constitutional right to a unanimous verdict in felony cases extends only to the return of a verdict adverse to the accused, and that the legislature may provide for the return of a verdict favorable to the accused on less than unanimous agreement.

*Molandes*, 571 S.W.2d at 4.

In *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980), the court examined the proper disposition when an appellate court reversed for insufficiency of evidence the jury's affirmative answer to special issue No. 2. The court concluded the principle of *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) barred seeking the death penalty on retrial. In *Sanne v. State*, 609 S.W.2d 762 (Tex.Cr.App.1980) the court relied on *Brasfield* and held that once a jury *answers no* to special issue No. 2 the de-

fendant should not be subjected to the threat of receiving death at retrial.

Padgett maintains that the jury's failure to answer special issue No. 2 is analogous to a negative finding under article 37.071. He reasons that since the statute provides that a negative finding or no finding at all dictates imposition of life imprisonment, the issue has been finally determined. This contention is without merit.

Prior to 1981, article 37.071 did not provide for disposition of a case when the jury was unable to answer one or more of the punishment issues. The trial court was forced to declare a mistrial as in all other criminal cases where the jury is unable to agree on punishment. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(c) (Vernon 1965). In order to avoid having the lengthy delay and great expense of retrying the guilt/innocence and punishment of the defendant for capital murder, the legislature sought to eliminate this situation.[2] In light of the constitutional requirement that a unanimous verdict is required unless a less than unanimous verdict inures to the benefit of the accused, *Molandes*, 571 S.W.2d at 4, the legislature had few alternatives in dealing with the hung-jury/retrial situation in capital cases.

An almost identical situation to the case at bar was recently addressed by an Illinois appellate court. In *People v. Hipkins*, 97 Ill.App.3d 174, 53 Ill.Dec. 16, 423 N.E.2d 208 (1981) (*reh'g denied*) the defendant appealed from a 50 to 100 year sentence. After returning a guilty verdict the jury was asked to determine whether the defendant had acted intentionally, or with knowledge that the acts which caused the death created a strong possibility of death or great bodily harm. The jury returned a verdict indicating they were unable to unanimously find that the factor of aggravation existed. At a subsequent sentencing hearing before the court the defendant

---

1. Emphasis added throughout by the author unless noted otherwise.

2. This objective is evidenced by the bill analysis which accompanied the 1981 amendment which

added the provisions for "unable to answer" situations. HOUSE COMM. ON JURISPRUDENCE, BILL ANALYSIS, Tex.H.B. 1164, 67th Leg. (1981).

argued the predicate aggravating factor could not be considered because collateral estoppel barred subsequent determination of a matter previously resolved in the defendant's favor. In rejecting the appellant's contention the court squarely addressed the applicability of the collateral estoppel doctrine to a jury's inability to answer a death penalty special issue:

> The essential problem with the estoppel argument advanced by the defense is the fact that the jury did not affirmatively find that the aggravating factor did not exist. Rather, the jury was unable to unanimously find that the factor did exist. From the record, then, all that can be concluded is that the jury was unable to reach a unanimous conclusion about the presence or absence of the aggravating factor. Thus there was never any conclusive decision by the jury on this factual issue sufficient to act as a bar by way of estoppel. While collateral estoppel applies to criminal proceedings, an essential predicate to its application is the presence of a valid and final determination of an issue of ultimate fact. (*People v. Ward* (1978), 72 Ill.2d 379, 382, 21 Ill.Dec. 178, 381 N.E.2d 256.) So, even assuming, *arguendo*, that collateral estoppel or some variant thereof, would preclude a trial judge from finding the presence of an aggravating factor after a jury had conclusively decided its absence, in the instant case there was no final and conclusive determination by the jury of the factual issue concerning the presence or absence of the aggravating factor of knowledge. The defense argues that the statutory language in Section 9–1(g) (Ill. Rev.Stat.1977, ch. 38, par. 9–1(g)) [3] transforms the lack of an affirmative finding on the question into an affirmative finding that the factor did not exist. We disagree. In applying collateral estoppel, the courts are obliged to look with "realism and rationality" in addressing the issue concerning which factual questions were actually decided previously, so as to act as a bar. (*People v. Ward* (1978), 72 Ill.2d 379, 384, 21 Ill.Dec. 178, 381 N.E.2d 256.) The inquiry must be set in a practical framework and viewed with an eye to all the circumstances of the proceedings. (72 Ill.2d 379, 384, 21 Ill.Dec. 178, 381 N.E.2d 256.) It is clear from the jury's verdict that it was unable to make an affirmative finding either way on the factual question of the defendant's knowledge. A strained construction of general statutory language will not transform such a failure to reach a finding into a finding so that the principles underlying estoppel will be applied in the instant case.

*Hipkins*, 97 Ill.App.3d 174, 53 Ill.Dec. at 20, 423 N.E.2d at 212.

In Texas, as in Illinois, the Court of Criminal Appeals has held that in order to invoke the doctrine of collateral estoppel an issue of fact must have been *resolved* or *determined* to bar relitigation. *See Welch v. State*, 543 S.W.2d 378, 382 (Tex.Cr.App. 1976); *Lamberson v. State*, 509 S.W.2d 328, 329 (Tex.Cr.App.1974); *Jones v. State*, 514 S.W.2d 255, 256 (Tex.Cr.App.1974). In the instant situation the jury was unable to answer special issue No. 2. This inability to answer did not amount to a determination, and therefore, the doctrine of collateral estoppel does not apply.

We hold the State is not precluded from seeking the death penalty in Cause No. F–88–86740–L. The trial court's denial of

---

**3.** (g) Procedure—Jury. If at the separate sentencing proceeding the jury finds that none of the factors set forth in Subsection (b) exists, the court shall sentence the defendant to a term of imprisonment under Chapter V of the Unified Code of Corrections. If there is a unanimous finding by the jury that one or more of the factors set forth in Subsection (b) exists, the jury shall consider aggravating and mitigating factors as instructed by the court and shall determine whether the sentence of death shall be imposed. If the jury determines unanimously that there are no mitigating factors sufficient to preclude the imposition of the death sentence, the court shall sentence the defendant to death.

Unless the jury unanimously finds that there are no mitigating factors sufficient to preclude the imposition of the death sentence, the court shall sentence the defendant to a term of imprisonment under Chapter V of the Unified Code of Corrections.

o

habeas corpus relief is affirmed and relator's application for a writ of prohibition is denied.

SHUMPERT, Justice, dissenting.

I respectfully dissent. Calvin Loyd Padgett brings this appeal from an order of the district court denying him habeas corpus relief which we treat as application for writ of prohibition. In the present case Padgett seeks to prevent the State from seeking the death penalty in his pending trial for capital murder of one of three victims who were slain in one criminal episode. The State sought and failed to obtain the death penalty in a preceding trial for capital murder of one of the other three victims. Padgett contends that the principle of collateral estoppel bars the State from again seeking the death penalty against him. I agree. In my view the majority allows the State to again seek the death penalty after the ultimate fact issue of future dangerousness was resolved against the State in the prior trial. In my view the majority's holding violates the doctrine of collateral estoppel. Accordingly, I would grant the writ of prohibition.

We have jurisdiction over this appeal by virtue of *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App.1982). If a defendant properly raises a jeopardy issue prior to a second trial by application for writ of habeas corpus, an adverse decision on that application is immediately appealable to the court of appeals. 641 S.W.2d at 555 and n. 7. If a defendant is to avoid exposure to double jeopardy, his double jeopardy challenge must be reviewable before the subsequent exposure occurs. *Abney v. United States*, 431 U.S. 651, 660–662, 97 S.Ct. 2034, 2040–2041, 52 L.Ed.2d 651, 662 (1977). This same rule is applicable to a collateral estoppel challenge. Indeed, in *Robinson* the Court of Criminal Appeals reviewed a collateral estoppel claim in a habeas corpus appeal. 641 S.W.2d at 556. Although Padgett has advanced his claim by habeas appeal, at oral argument he stated that the true remedy he sought was a writ of prohibition; accordingly, the majority correctly treats this appeal as an application for writ of prohibition.

The record before us indicates that Padgett killed three people during the robbery of a restaurant in Titus County. Padgett was indicted by a Titus County grand jury on three capital murder charges. These three cases, cause numbers 10,082–10,084, were assigned to the 276th Judicial District Court of Titus County. On August 22, 1983, Padgett was brought to trial in cause no. 10,082, and that trial resulted in a conviction for capital murder. The trial court then conducted a punishment hearing and evidence was heard on the three punishment issues provided by TEX.CODE CRIM. PROC.ANN. art. 37.071 (Vernon 1981).[1] The bulk of the testimony was directed at the second punishment issue, i.e., whether Padgett would likely commit criminal acts of violence that would constitute a continuing threat to society. *See* TEX.CODE CRIM.PROC.ANN. art. 37.071(b)(2). The jury returned a verdict answering the first and third punishment issues in the affirmative; however the jury did not answer the second issue.[2]

1. (b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

 (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

 (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

 (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

 TEX.CODE CRIM.PROC.ANN. art. 37.071(b)(1)–(3).

2. (c) The State must prove each issue submitted beyond a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue submitted.

 (d) The court shall charge the jury that:

 (1) it may not answer any issue "yes" unless it agrees unanimously; and

 (2) it may not answer any issue "no" unless 10 or more jurors agree.

The trial court asked the jury if it had indeed failed to answer this issue and the jury responded in the affirmative. The court then asked the prosecutor and Padgett's counsel if they had any objections to the verdict. None was offered. The court thereupon accepted the verdict without requiring further deliberations and sentenced Padgett to life imprisonment, the only alternative available under Article 37.071.[3]

On November 7, 1983, pretrial hearings were scheduled in cause no. 10,083. Padgett's motion for change of venue was granted and this case was transferred to Dallas County, where it was assigned to the Criminal District Court Number Five of Dallas County, Texas. In that court, Padgett filed his application for writ of habeas corpus and the trial court denied relief. There, as here, Padgett contends that the State cannot again seek the death penalty when the issue of future dangerousness has been once litigated and resolved adversely to the State.

"Collateral estoppel is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970). This principle precludes the government from relitigating issues determined in a prior judgment favorably to a defendant. *United States v. Nelson*, 599 F.2d 714, 716 (5th Cir.1979). Therefore, we must examine the record to determine whether the issue of Padgett's future dangerousness has been resolved by a valid and final judgment. We must apply the principle of collateral estoppel with "realism and rationality," *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475, while recognizing that "collateral estoppel does not have the sur-

gical precision found in double jeopardy, for its basics are founded in equity and therefore command some flexibility." *United States v. Larkin*, 605 F.2d 1360, 1369 (5th Cir.1979), *cert. denied*, 466 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 793 (1980). In *Ashe*, the accused allegedly robbed six poker players. Each was a separate and distinct offense. But the issue was not the character of these offenses. The issue was:

> whether, after a jury determined by its verdict that the petitioner [Ashe] was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again. 397 U.S. 446, 90 S.Ct. 1195, 25 L.Ed.2d 477.

Therefore, in applying the principle of collateral estoppel in the present case, we must ask whether an issue of ultimate fact with respect to the entire criminal episode was litigated and resolved favorably to Padgett.

It is obvious that the issue of Padgett's future dangerousness was litigated at the first trial. It is also obvious that this issue was an issue of ultimate fact with respect to the entire criminal episode that was litigated and resolved adversely to the State in the first trial. During the guilt-innocence phase of trial, the State presented evidence of all three killings. The court's charge on punishment, of course, allowed the jury to consider all evidence introduced at trial in their deliberations. The State also introduced evidence of Padgett's prior criminal record. Finally, the State called as a witness Dr. Clay Griffith, who testified that Padgett would be a continuing threat to society based on a hypothetical question containing Padgett's prior criminal record, the facts of the charged offense, and the facts of the other two killings.

The jury, however, failed to answer the second punishment issue. Thus, we must consider the effect of their failure to do so.

TEX.CODE CRIM.PROC.ANN. art. 37.071(c) and (d).

3. "If the jury returns a negative finding on or is unable to answer any issue submitted under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life." TEX.CODE CRIM.PROC.ANN. art. 37.071(e) (Vernon Supp.1984).

The State argues that the jury made no finding on the second punishment issue, and that, therefore, the doctrine of collateral estoppel does not apply. The appellant argues that the jury's failure to answer constitutes a legislative required "no" answer. I agree with the appellant. Although the jury was unable to resolve this issue, the Code of Criminal Procedure treats the inability to reach an answer the same as a negative answer; in both cases, the defendant may not be sentenced to death and instead must be sentenced to life imprisonment. TEX.CODE CRIM.PROC. ANN. art. 37.071(e) (Vernon Supp.1984). Thus, the result of the jury's failure to answer an issue is a legislative directed negative answer. Because the legislature has chosen to give the same result to both a jury "no" and a jury "blank" finding, we are compelled to honor this choice. Accordingly, I would hold that the jury's failure to make a finding on the issue of future dangerousness constitutes a negative finding on this issue for purposes of the application of collateral estoppel.[4]

I recognize that there is legislative history showing that Article 37.071(e) was enacted for the purpose of preventing a mistrial when a jury is unable to answer one of the special punishment issues. HOUSE COMM. ON JURISPRUDENCE, BILL ANALYSIS, TEX. H.B. 1164, 67th Leg. (1981). Whatever the underlying purpose may be, the legislature, however, has determined that the failure to answer a punishment issue shall be treated the same as a negative answer, and we may not fashion a different rule.

In light of my conclusion that the second punishment issue was answered "no," I turn to a consideration of the effect of that negative answer. In *Sanne v. State,* 609 S.W.2d 762, 766–767 (Tex.Cr.App.1980), the court held that, once a jury had answered the second punishment issue in the negative, upon reversal and retrial, the constitutional protections against double jeopardy prohibited the State from again seeking the death penalty. I see no reason for a different result when the doctrine of collateral estoppel is invoked. Thus, I conclude that the legislative "no" answer requires that the relief sought be granted. The issue of Padgett's future dangerousness was thoroughly litigated in the first trial. The jury heard evidence of all three killings, Padgett's prior criminal record, and psychiatric testimony on this issue. The jury was unable to determine whether Padgett would constitute a continuing threat to society with respect to this entire criminal transaction and the other available evidence. I would hold, therefore, that the doctrine of

---

**4.** The majority cites one case dealing with a similar problem from another state court, *People v. Hipkins,* 97 Ill.App.3d 174, 53 Ill.Dec. 16, 423 N.E.2d 208 (1981). In that case, the defendant was convicted of murder. Under the statute in effect at that time, the jury was then called upon to determine whether any specified aggravating factors were present. If any such factors were found, the jury could proceed to consider aggravating and mitigating factors, if any. If the jury found that no mitigating factors existed, the defendant would be sentenced to death. ILL.REV.STAT. Ch. 38, § 9–1(g) (1979). The jury, however, was unable to determine whether the aggravating factor submitted to them existed. At a subsequent sentencing hearing before the court, the State recommended a life sentence. In order to assess a life sentence, the court would have to find that the aggravating factor was present. ILL.REV.STAT. Ch. 38, § 1005–8–1 (1982). The defendant argued that because the jury was unable to find that this aggravating factor existed, the court could not so find. The court overruled the defendant's objection and announced that it would consider the aggravating factor in pronouncing sentence. The court, however, allowed the defendant to be sentenced to a term of years under a previous sentencing law.

The court of appeals held that the trial court was not collaterally estopped from considering the aggravating factor; the court held that there was no conclusive jury finding on the presence or absence of the aggravating factor. 53 Ill.Dec. 20, 423 N.E.2d 212. The defendant argued that the jury's inability to resolve the issue constituted a finding that the aggravating factor was not present. The court termed this "a strained construction of general statutory language." 53 Ill. Dec. 21, 423 N.E.2d 213.

I find *Hipkins* to be distinguishable from the case before us. Unlike the Illinois statute, article 37.071(e) gives the same effect to the failure to make a finding as a negative finding. Thus, it is not a "strained reading" of statutory language to say that under article 37.071(e), the lack of a finding is equivalent to a negative finding.

collateral estoppel bars the State from again litigating this issue in a trial for the killing of another one of the victims.

Therefore, should Padgett be convicted of capital murder in this pending case, I would order the judge of the Criminal District Court Number Five of Dallas County to sentence Padgett to life imprisonment without hearing evidence on any of the special punishment issues of Article 37.071. Accordingly, in my view, an appropriate writ of prohibition should issue from this court.

WHITHAM, J., joins in this dissent.