**Calvin Lloyd PADGETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 766–84.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

Jerry R. Birdwell, Tim Tyner, Lawrence B. Mitchell, on appeal only, Dallas, for appellant.

Charles M. Cobb, Dist. Atty. and Charles C. Bailey, Asst. Dist. Atty., Mt. Pleasant, Robert Huttash, State's Atty.; Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

The Double Jeopardy Clause of our federal constitution protects a defendant from

---

twice being placed in jeopardy for the same offense.[1] Embodied within that guarantee is the doctrine of collateral estoppel—"the principle that bars relitigation between the same parties of issues actually determined at a previous trial." *Ashe v. Swenson*, 397 U.S. 436, 442, 445–46, 90 S.Ct. 1189, 1193, 1195, 25 L.Ed.2d 469, 474, 476 (1970). We granted appellant's petition for discretionary review to determine whether this federal doctrine of collateral estoppel prevents the State from seeking the death penalty against appellant in the instant case under the circumstances here presented.[2]

On September 20, 1983, in Cause No. 10,082, appellant was convicted of the capital murder of Howard McClaflin, one of three victims killed in the course of a robbery committed by appellant. The jury then answered Special Issues Nos. 1 and 3 affirmatively. (R. VI–49, Exhibit # 5, p. 1451–52). See Art. 37.071(b)(1) & (3). However, the jury was unable to answer Special Issue No. 2. (R. VI–49, Exhibit # 5, p. 1451–52).[3] Therefore, the trial court sentenced appellant to confinement for life in the Texas Department of Corrections.[4]

In Cause No. 10,083, the State then attempted to try appellant for the capital murder of Shirley Thompson, another victim in the same robbery. Appellant filed a pretrial writ of habeas corpus, which contained a special plea of former jeopardy to prevent the State from seeking the death penalty in the instant case. See Art. 11.07, § 1, V.A.C.C.P. In particular, appellant argued that the jury's inability to answer Special Issue No. 2 in his trial for the capital murder of Howard McClaflin constituted an express negative finding that collaterally estopped the State from relitigating the issue in his trial for the capital murder of Shirley Thompson.

The trial court denied appellant habeas corpus relief, and appellant appealed to the Fifth Court of Appeals under the authority of *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex.Cr.App.1982); see also *Ex parte Rathmell*, 717 S.W.2d 33 (Tex.Cr.App.1986). The Court of Appeals affirmed the trial court's denial of habeas corpus relief. *Ex parte Padgett v. State*, 673 S.W.2d 303 (Tex.App.—Dallas 1984).

The Court of Appeals held that the jury's inability to answer Special Issue No. 2 during the penalty phase of appellant's trial for the capital murder of Howard McClaflin did not amount to a fact determination that resolved the issue of appellant's future dangerousness. *Padgett*, supra, at 306. Although the Court of Appeals was unable to locate any direct support for its holding in the prior decisions by this Court, it found an Illinois appellate court's reasoning persuasive:

> The essential problem with the estoppel argument advanced by the defense is the fact that the jury did not affirmatively find that the aggravating factor did not exist. Rather, the jury was unable

---

1. "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The Fifth Amendment's guarantee against double jeopardy was enforced against the states through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

2. We granted appellant's petition because it raised an important question of federal law that has not been, but should be, settled by this Court. Art. 44.33, R. 302(c)(2), V.A.C.C.P. (Supp.1986). In his petition for discretionary review, appellant also raised Article I, §§ 14 & 19, of the Texas Constitution. However, appellant only raised the Fifth Amendment before the trial court and the Court of Appeals. (R. I–3); (Appellant's Motion for Stay of Trial Proceed-

ings, p. 4). Therefore, we restrict our discussion to the application of the Fifth Amendment to the instant case. Cf. *McCambridge v. State*, 712 S.W.2d 499, 501–502, n. 9 (Tex.Cr.App.1986).

3. Following the presentation of all relevant punishment evidence, Special Issue No. 2 requires the jury to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Art. 37.071(b)(2), V.A.C.C.P.

4. "If the jury ... is unable to answer any issue submitted under [Article 37.071], the court shall sentence the defendant to confinement in the Texas Department of Corrections for life." Art. 37.071(e), supra.

to unanimously find that the factor did exist. From the record, then, all that can be concluded is that the jury was unable to reach a unanimous conclusion about the presence or absence of the aggravating factor.[5] Thus there was never any conclusive decision by the jury on this factual issue sufficient to act as a bar by way of estoppel. While collateral estoppel applies to criminal proceedings, an essential predicate to its application is the presence of a valid and final determination of an issue of ultimate fact. [citation omitted].

*Padgett*, supra, at 306, quoting *People v. Hipkins*, 97 Ill.App.3d 174, 53 Ill.Dec. 16, 20, 423 N.E.2d 208, 212 (1981). Accord *People v. Shlensky*, 118 Ill.App.3d 243, 73 Ill.Dec. 854, 454 N.E.2d 1103 (1983); *People v. Scaggs*, 111 Ill.App.3d 633, 67 Ill.Dec. 438, 444 N.E.2d 674 (1982). Therefore, the Court of Appeals held that the State could seek the death penalty in the instant cause. *Id.*

Appellant argues that the Court of Appeals erred because the jury's inability to answer Special Issue No. 2 in his first capital murder trial constituted a final determination of a fact issue. Invoking the collateral estoppel doctrine originally advanced in *Ashe*, supra, appellant argues that this fact determination precludes the State from relitigating that issue by seeking the death penalty in the instant cause. We disagree.

In *Ashe*, supra, a defendant had been charged with having robbed six poker players. The State had first tried the defendant Ashe for robbing one of the poker

players. In that trial, the jury acquitted Ashe. The only contested issue in the trial had been whether the defendant Ashe was in fact one of the robbers. The State then attempted to try Ashe for the robbery of another of the poker players. The Supreme Court held that the collateral estoppel doctrine, as embodied within the Fifth Amendment, prohibited the State from prosecuting Ashe for the robbery of any of the other five poker players because a jury had already decided that Ashe was not one of the robbers. *Id.*, 397 U.S. at 446, 90 S.Ct. at 1195–96.

Presuming that the Fifth Amendment requires that the doctrine of collateral estoppel be applied to the punishment phases of different capital murder trials, we must now determine whether the jury actually decided Special Issue No. 2 in appellant's first capital murder trial.[6] If it did, then the State would be collaterally estopped from relitigating the issue, thus preventing it from seeking the death penalty in the instant case.

To determine whether a state is collaterally estopped from relitigating an issue in a criminal case, the Supreme Court offered the following guidance:

[A court should] ... examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration [footnote omitted]. The inquiry must be set in a practical frame and viewed with an eye to all the

---

5. The Illinois sentencing statute required unanimity on the punishment issue. In Texas, unanimity on a capital murder punishment issue is only required for an affirmative answer. A negative answer may be returned by ten or more jurors. See Art. 37.071(d)(1) & (2), supra.

6. In *Ashe*, supra, the Supreme Court applied the doctrine of collateral estoppel to the *guilt/innocence phases* of two different trials. We are not aware of any Supreme Court case applying collateral estoppel to the *punishment phases* of two *different* capital murder trials. However, the Supreme Court has recently relied upon the Double Jeopardy Clause in holding that a jury's

determination that a defendant should be sentenced to life prevents the State from seeking the death penalty upon retrial of the *same* case. *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984); *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). See also *Sanne v. State*, 609 S.W.2d 762, 767 (Tex.Cr.App.1980). We need not decide whether these cases require the application of collateral estoppel to the punishment phases of different cases because the instant case does not even involve a fact issue that has been sufficiently resolved to invoke that doctrine. See discussion, *post*, at 58.

circumstances of the proceedings [cite omitted].

*Id.*, at 444, 90 S.Ct. at 1194. See also generally Restatement (Second) of Judgments, Introduction notes, comment d; Vestal, *Issue Preclusion and Criminal Prosecutions,* 65 Iowa L.Rev. 281 (1980); Comment, *The Double Jeopardy Clause: Refining the Constitutional Proscription Against Successive Prosecutions,* 19 U.C. L.A. L.Rev. 804 (1972).

In the instant case, appellant seeks to foreclose the jury from considering the death penalty because of a prior jury's inability to answer a punishment question in the affirmative. We agree that in appellant's first trial for capital murder, the jury was presented with a narrow issue: "whether there is a probability that [appellant] would commit criminal acts of violence that would constitute a continuing threat to society." Art. 37.071(b)(2), supra. However, the jury did not answer the question affirmatively or negatively. Instead, it was unable to answer the question.

Prior to 1981, that circumstance would have resulted in a hung jury on punishment, requiring the trial court to declare a mistrial. See Art. 37.07, § 3(c), V.A.C.C.P. (1981); *Eads v. State,* 598 S.W.2d 304 (Tex. Cr.App.1980). However, in 1981, the Legislature amended Article 37.071(e), supra, to require the trial court to sentence appellant to life imprisonment if the jury "is unable to answer any issue submitted" under Article 37.071, supra. Acts 1981, 67th Leg., p. 2673, ch. 725, § 1, eff. Aug. 31, 1981. See Art. 37.071(e), V.A.C.C.P. (Supp.1986). In capital murder cases, this special provision of Article 37.071(e), supra, now controls over the general provision of Article 37.07, § 3(c), supra. Cf. *Molandes v. State,* 571 S.W.2d 3, 4 (Tex.Cr.App.1978). Therefore, a jury's inability to answer a punishment question in a capital murder case has the same sentencing effect as a negative answer. See Art. 37.071(e), supra.

As the Court of Appeals noted, the legislative history to Article 37.071(e) indicates that the Legislature included the "unable to to answer" provision "to avoid having the lengthy delay and great expense of retrying the guilt/innocence and punishment of the defendant for capital murder." *Padgett,* supra, at 305, citing House Comm. on Jurisprudence, Bill Analysis, Tex.H.B. 1164, 67th Leg. (1981). See also House Comm. on Criminal Jurisprudence, Hearings on H.B. 1164, April 1, 1981. Nothing in the legislative history of H.B. 1164 indicates that the Legislature intended that a jury's nonanswer be converted into a negative answer for the purpose of collateral estoppel.

Additionally, the Legislature provided that "[t]he court, the attorney for the state, or the attorney for the defendant may not inform a juror or a prospective juror of the effect of failure of the jury to agree on an issue submitted under [Article 37.071, supra]." Art. 37.071(g), supra (Supp.1986). Therefore, the jury's inability to answer Special Issue No. 2 in appellant's first capital murder trial could not be interpreted as anything more than a nonanswer. As the Court of Appeals held, "[a] strained construction of general statutory language will not transform such a failure to reach a finding into a finding so that the principles of estoppel will be applied...." *Padgett,* supra, at 306, quoting *Hipkins,* supra, 53 Ill.Dec. at 21, 423 N.E.2d at 213.

Under these circumstances, we must conclude that the jury's inability to answer Special Issue No. 2 in appellant's trial for the capital murder of Howard McClaflin (Cause No. 10,082) was not an actual determination of that issue. Without such a determination, the State is not collaterally estopped from relitigating that issue by trying appellant for the capital murder of Shirley Thompson (Cause No. 10,083). Therefore, the State is not estopped from seeking the death penalty in that cause.

We affirm the judgment of the Court of Appeals.

ONION, Presiding Judge, dissenting.

I dissent. I do not agree with *Ex parte Robinson,* 641 S.W.2d 552, 555 (Tex.Cr. App.1982). The matter is not properly be-

fore us. See my dissent in *Ex parte Rathmell*, 717 S.W.2d 33 (Tex.Cr.App.1986).

TOM G. DAVIS, J., joins.

CLINTON, Judge, dissenting.

Semantics aside, it seems to me that a legislative decision to terminate risk of death as punishment for a person found guilty of capital murder raises a grave jeopardy problem, and that it is not rationally resolved in the majority opinion by merely saying the jury did not make "an actual determination of [the second punishment] issue." At p. 57.[1] The State must prove beyond a reasonable doubt each special issue submitted to the jury. Article 37.071(c), V.A.C.C.P. The jury is instructed to that effect and that it may not answer any issue "yes" unless all jurors agree unanimously. Article 37.071(d)(1). Having assayed evidence adduced by the State and defendant, when a jury does not find unanimously in favor of the State on any special issue, the effect in law is that the State has not sustained its burden of proof. Whether manifested by agreement of ten jurors to answer a special issue "no" or by a failure to answer is of no moment, for the consequence is the same: a sentence to confinement for life. No longer will an unanswered issue constitute an unacceptable "incomplete verdict" on punishment or a basis for declaring a mistrial and ordering a new trial. Compare *Eads v. State*, 598 S.W.2d 304, 306–307 (Tex.Cr. App.1980), an opinion which probably motivated interested parties to urge the Legislature to amend Article 37.071(e) in 1981.

The majority recognizes that "a jury's *inability* to answer a punishment question in a capital murder case has the same sentencing effect as a negative answer." At p. 58.[2] However, the majority spends too much time trying to find the meaning and import of a "nonanswer" in a punishment verdict accepted by a trial judge and on which the judgment of the trial court is based.[3] The crucial question is whether an adjudication of guilt of capital murder with a legislatively mandated sentence of confinement for life operates to preclude the State from seeking the death penalty in a second trial involving a different victim in the same transaction.

Part of the answer may be found in *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) and *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), both of which the majority dismisses because "the instant case does not even involve a fact issue that has been sufficiently resolved to invoke that doctrine." At p. 57, n. 6. Yet, the Legislature has declared "inability" of a jury to answer any special issue submitted to it is the functional equivalent of a nega-

---

1. There may constitutional problems as well, but I do not address, much less identify, them; I write for another purpose.

2. The Dallas Court of Appeals found factually, "The jury *failed* to answer special issue No. 2 in either the affirmative or negative." *Ex parte Padgett*, 673 S.W.2d 303, 304 (Tex.App.—Dallas 1984). While neither party makes a point of it, a subtle difference in effect between "inability" and "failure" seems to have been detected in *Eads v. State*, supra. Whether there still is after the 1981 amendment to Article 37.071(e), supra, need not be ventured here since the majority relies only on *"inability."* (All emphasis is mine throughout unless otherwise indicated.)

3. Not at all surprisingly, it finds nothing to indicate that the Legislature "intended that a jury's nonanswer be converted into negative answer for the purpose of collateral estoppel." At p. 58. However, a cardinal rule in statutory interpretation is to ascertain legislative intent in enacting a statute, and such intent and determination is to be based on language of statute itself. *Faulk v. State*, 608 S.W.2d 625, 631 (Tex. Cr.App.1980); *Ex parte Hayden*, 152 Tex.Cr.R. 517, 215 S.W.2d 620 (1949). Under case law resort to such external aids in interpreting a statute is proper only to resolve an ambiguity. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814 (Tex.1983); *Harris v. City of Fort Worth*, 142 Tex. 600, 180 S.W.2d 131 (1944). There is nothing ambiguous about the language in § 1, Acts 1981, 67th Leg., Ch. 725, p. 2673. While a notion of its purpose may be expressed in a "bill analysis" done by staff to a House committee, still the Legislature is deemed to have intended consequences flowing from its solemn enactments. See *Ex parte Santellana*, 606 S.W.2d 331, 333 (Tex.Cr.App.1980). One clear result is that, contrary to *Eads*, supra, even a "nonanswer" in a verdict will compel a trial court to enter a judgment imposing life imprisonment.

**60**

tive answer, resulting in a judgment imposing a sentence of confinement for life. That is similar to the context framed by the Supreme Court in the former, *viz:*

> "In short, a sentence imposed after a completed Arizona capital sentencing hearing is a judgment like the sentence at issue in *Bullington v. Missouri,* which this Court held triggers the protections of the Double Jeopardy Clause."

*Arizona v. Rumsey,* supra, 467 U.S. at 210, 104 S.Ct. at 2310.

With its jeopardy premise established, the Supreme Court identified the relevant double jeopardy principle, towit: "an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge." *Ibid.* Texas has legislatively mandated that an unanswered special issue has the same effect as a "no" answer, constituting an acquittal on the merits of the death penalty issue. Therefore, according to *Arizona v. Rumsey:*

> "Application of the *Bullington* principle renders respondent's death sentence a violation of the Double Jeopardy Clause because respondent's initial sentence of life imprisonment was undoubtedly an acquittal on the merits of the central issue in the proceeding—whether death was the appropriate punishment for respondent's offense..... That judgment, *based on findings sufficient to establish legal entitlement to the life sentence,* amounts to an acquittal on the merits and, as such, *bars any retrial of the appropriateness of the death penalty."*

*Ibid.*

While *Arizona v. Rumsey* involved a retrial for the same offense, the *Bullington* principle should be equally applicable where, as here, there is but one transaction, albeit three victims. See *Ex parte Crosby,* 703 S.W.2d 683 (Tex.Cr.App.1986) (theft being an integral part of the offense of aggravated robbery, when but one theft occurs, only one conviction may stand); see

also *Ex parte Rathmell,* 664 S.W.2d 386 (Tex.App.—Corpus Christi 1983) (just one involuntary manslaughter conviction permitted in transaction causing death of two victims), *reversed,* 717 S.W.2d 33 (Tex. Cr.App.1986). For indicia of further legislative intent in serial murder offenses, see Article 37.071(f).[4]

Because the majority does not address the jeopardy problem with a proper analysis of existing law, I respectfully dissent.

TEAGUE, J., joins this opinion.

---

**4.** "If defendant is convicted of an offense under Section 19.03(a)(6), Penal Code, the court shall submit the three issues under Subsection (b) of this article only with regard to the conduct of the defendant in murdering the deceased individual first named in the indictment."