# Illinois Official Reports

## Appellate Court

***People v. Thompson*, 2015 IL App (1st) 122265**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW THOMPSON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2265 |
| Filed | August 5, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-1001; the Hon. William G. Lacy and the Hon. Thaddeus L. Wilson, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Michael Orenstein, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Bianca R. Pucci, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Lavin and Mason concurred in the judgment and opinion. |

¶ 1    Following a jury trial, defendant Andrew Thompson was convicted of burglary (720 ILCS 5/19-1(a) (West 2010)) and theft (720 ILCS 5/16-1(a)(1) (West 2010)). The trial court merged the two convictions and sentenced Thompson to 18 years' incarceration on the burglary conviction. Thompson asks for reversal of his conviction and remand for new trial, arguing that the State, during its rebuttal argument, improperly minimized the burden of proof and attacked his exercise of his constitutional right to a jury trial. Alternatively, Thompson argues that the trial court ignored his allegations that his attorney had a conflict of interest, and requests that this court remand this cause for a hearing as provided in *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 2    We affirm. The State's closing argument did not result in substantial prejudice or constitute a material factor in Thompson's conviction. While neither the trial court nor the parties should define "reasonable doubt" for a jury, no error occurred regarding the prosecutor's remarks in closing argument about the reasonable doubt standard. Moreover, the arguments in closing made by Thompson's counsel invited the State's response. In a similar fashion, while the State's closing argument that Thompson was trying to "evade his responsibility" was improper, the evidence was not close and no prejudice resulted from the remarks. Finally, Thompson's pretrial *Krankel* motion did not allege sufficient grounds to justify appointment of new defense counsel.

¶ 3                                                    BACKGROUND

¶ 4    On October 19, 2010, someone stole two bags containing laptops and other school related items from outside a meeting room on the University of Chicago campus. Surveillance cameras inside the building recorded the perpetrator entering the building, walking in the hallway, taking the two bags, and then leaving immediately. Cameras outside the building recorded the perpetrator taking a bicycle from a bike rack and making his getaway through a parking lot.

¶ 5    Two months later, University police detained Thompson for questioning and, after viewing the videos and three still photographs of the perpetrator, contacted the Chicago police department. Thompson was arrested and charged with burglary and theft of the bag which belonged to student Deepak Gaur.

¶ 6                                              Pretrial Proceedings

¶ 7    At a status hearing on September 30, 2011, Thompson's assistant public defender asked for a final status date, stating that she had followed up on information Thompson had given her since his last status. Thompson then attempted to present a document to the trial court. The following exchange occurred:

> "THE COURT: Why is your hand up?
>
> THE DEFENDANT: I want to present something to you about the case.
>
> THE COURT: Talk to your attorney.
>
> THE DEFENDANT: I can't give you this paper?
>
> THE COURT: You can give it to the lawyer.

[ASSISTANT PUBLIC DEFENDER]: I already have this. This is the arrest report.

THE DEFENDANT: That's not the arrest report. This is about a warrant.

[ASSISTANT PUBLIC DEFENDER]: I have a copy of the warrant in the file. There is a copy–

THE DEFENDANT: Could you give it to the Judge for me?

THE COURT: I'm not allowed to see that. When we go to trial, we go to trial.

THE DEFENDANT: Mr. Lacy, can I mail this to you?

THE COURT: No, you can't. I can't see police reports.

THE DEFENDANT: No, this is a warrant from Dorothy Brown, that the police lied and said I had a warrant on me for my arrest.

[ASSISTANT PUBLIC DEFENDER]: Judge–

THE DEFENDANT: There was no investigative alert.

THE SHERIFF: Quiet.

[ASSISTANT PUBLIC DEFENDER]: Judge, I have a copy of the warrant in his file. There was a warrant.

THE DEFENDANT: There wasn't a warrant.

THE COURT: By-agreement, 10-24.

THE DEFENDANT: Dorothy Brown–

THE COURT: By agreement, 10-24.

THE DEFENDANT: Tell that lie, telling it was a warrant. It wasn't no warrant [*sic*]. I got the papers for you."

At this point, the trial court continued the case.

¶ 8   On October 24, Thompson again raised his hand, and the trial court told him to talk to his lawyer. Thompson responded, "She ain't talking to me." The trial court said, "She is talking to you" and Thompson responded, "no she ain't." The trial court then told Thompson, "We set the case for trial sir."

¶ 9   On January 17, 2012, Thompson filed a *pro se* motion for a *Krankel* hearing, alleging a "major conflict of interest and lack of communication" with the assistant public defender assigned to defend him. His motion stated:

"In support of these contentions the petitioner hereby submits that said counsel is possibly incompetent and utter disregard in preparing the petitioner with a viable defense [*sic*]; (2) the petitioner has made repeated efforts to make said attorney aware of Andrew Thompson wrote the Warrant Clerk, Room 901, Richard J. Daley Center in which Dorothy Brown Clerk of the Circuit Court of Cook County hereby certified the Statement of Disposition that there was never a warrant of any kind in this case against Andrew Thompson ***. When Andrew Thompson gave copies to his court appointed attorney ***, she refused to accept and submit document to court. Andrew Thompson made an attempt to submit to Judge himself the documents. Judge Lacy stated you have to give documents to your attorney to submit. Andrew Thompson stated to Judge on record attorney refused to accept documents in bullpen. Andrew Thompson's complaint is his court appointed attorney [name] is not trying to get to

- 3 -

the bottom of this, but is continually holding her client illegally incarcerated for the state. Andrew Thompson would like to no longer be represented by \*\*\*."

¶ 10    The next day the assistant public defender filed the answer raising an alibi defense.

¶ 11    The record also contains a "Petition for Writ of Habeas Corpus" filed *pro se* on February 3, 2012, asserting a violation of Thompson's fourth, sixth, and fourteenth amendment rights. Thompson further asserted that "there was never a warrant of any kind in this case" and that his attorney perjured herself when she stated there was an active warrant. Attached to the petition was a "CERTIFIED STATEMENT OF CONVICTION / DISPOSITION" from the Clerk of the Circuit Court of Cook County with a reference number "11CR0100101" (the CR number assigned to this case in the trial court) with a handwritten notation stating "[t]here is no warrant on this case." Also attached to the written motion was a scheduling form indicating the motion would be heard on March 20, 2012.

¶ 12    On March 21, the following exchange occurred:

"[Assistant Public Defender]: We are asking that the matter be reset for trial [from March]. I understand that Mr. Thompson had filed a motion regarding–

THE COURT: Well you talk to him about it. We will deal with it next time."

The matter was then scheduled by agreement for trial on May 8. On that date, Judge Lacy sent the matter for reassignment because he was unable to preside over the trial for the next few days.

¶ 13    <center>Trial</center>

¶ 14    Judge Thaddeus Wilson heard argument on motions *in limine*, ruling that neither party could mention that the charges had been filed after Thompson was detained under an outstanding warrant for a prior misdemeanor criminal trespass to property charge (in late December 2010 Thompson pleaded guilty to that charge and received a sentence of conditional discharge).

¶ 15    Deepak Gaur, a graduate student in the University's business school, testified that on October 19, 2010, he attended a recruiting event on the campus. Gaur had a bag with him containing a laptop and other belongings worth over $1,000 that he left on the hallway floor near a coat rack. When Gaur returned after about one hour later, the bag was missing. He alerted the security officer at the front desk.

¶ 16    John Taplett, also a graduate student in the University business school, testified that he attended the October 19 recruitment event. He left his bag containing a laptop and other items on top of the luggage rack in the hallway outside the meeting room. His bag was also missing when he returned. Taplett spoke to the security guard, Demarquez Alexander, who pulled the security camera feed that was recording in the hallway. Taplett viewed the video from the surveillance camera. On the video Taplett saw an individual whom he did not recognize take two bags from the hallway.

¶ 17    University security guard Alexander monitored the security cameras from the front desk. When Alexander learned of the laptop disappearance, he viewed videos from the security cameras located inside and outside the building. Alexander saw a black male take two laptops from the area and leave. Alexander stated that the video from outside the building showed an individual stealing a bicycle before coming into the school. Defense counsel objected to the testimony about the bicycle and moved for a mistrial, which was denied. The

<center>- 4 -</center>

trial court struck the statement and instructed the jury to disregard. On cross-examination, Alexander testified that he did not see anything happening.

¶ 18    University police officer Arthur Gillespie testified that in August 2010, he learned that Thompson had no affiliation with the University. On August 2, Gillespie told Thompson that he could not "return to" the University property, including the campus as well as the buildings. On December 16, two months after the October theft of the laptop, Gillespie saw Thompson on campus. Gillespie detained him for questioning and gave him *Miranda* warnings. Gillespie "viewed the video" from the burglary and recognized Thompson from a "prior interaction" with him. Gillespie then made three still photographs from the video that depicted a black male with a white baseball cap riding a bicycle away from the building where the burglary occurred. The photographs were admitted into evidence and published to the jury. Gillespie showed the photographs to Thompson and asked Thompson "if that was him." Thompson said, "yeah that's me." Gillespie summarized Thompson's statement in his report. Thompson did not give or sign a written statement, and no video was made of the oral statement. The City of Chicago police arrived and took over the investigation.

¶ 19    Chicago police department officer Livius Tomescu and his partner responded to the call on the University campus where Thompson was in custody. Tomescu spoke with the University police officers and viewed the video and the three photographs. Tomescu and his partner brought Thompson to a police station. After reading the *Miranda* rights, they asked Thompson if he wanted to speak. Thompson responded, "Yeah, what do you want to know?" Tomescu asked Thompson if he could return the laptops, but Thompson told him "I don't have them, I sold them." Tomescu included Thompson's statements in his case report. Thompson did not write or sign a written statement.

¶ 20    Detective Mark Cunningham testified that on December 16 he was assigned to investigate a theft on October 19 at the University business school. The next day, Cunningham interviewed Thompson at Area 1. Cunningham advised Thompson of his *Miranda* rights, and Thompson answered "yes" to each question, indicating he understood. Cunningham then asked Thompson about the burglary. Thompson told Cunningham that he had been in Wisconsin during the previous six weeks. Cunningham asked him "if there was any chance" the laptops could be returned; Thompson said that he sold them to someone "on the street" for $40. Cunningham wrote down the conversation on a progress report and in his "closing supplementary report." Cunningham did not obtain a written statement from Thompson nor did he video or audio tape Thompson's statement.

¶ 21    Thompson presented an alibi defense. Thompson's fiancée, Erin Johnson, testified that on October 19, her birthday, she and Thompson were in Wisconsin. Johnson knew Thompson for 27 years, and they sporadically dated. Thompson arrived in Wisconsin on August 29, left for a short time, and returned on October 1. He again left around November 1 and returned on November 3 or 4. Johnson stated that Thompson remained in Wisconsin until returning to Chicago on December 6.

¶ 22    At the conclusion of the State's case, Thompson moved for a directed verdict, which the trial court denied.

¶ 23                                    CLOSING ARGUMENTS

¶ 24    Defense counsel argued to the jury regarding the burden of proof: "The State has a burden to prove that it was indeed Mr. Thompson who stole those laptops. Not that it could

- 5 -

have been him, it might have been him, probably could have been him. No, that is not enough. They have to prove it beyond a reasonable doubt." Regarding Gillespie's testimony that Thompson said the photograph looked like him, she argued, "To say that it looks like me, you could look at it and say it could be him, it may not be him, it looks like him, that is not proof beyond a reasonable doubt." She also suggested that had the police taken fingerprints from the door of the building, "[the jury] wouldn't have to assume anything because the law requires that the State prove their case beyond a reasonable doubt, not for you to guess and think that what the possibilities could have been [*sic*]." Regarding the lack of a signed *Miranda* waiver and written statement, she argued: "[W]e do not have anything in writing, we do not have anything on video, and we do not have any signatures. Basically you are left here to guess. That is not proof beyond a reasonable doubt."

¶ 25        In rebuttal, the State argued:

> "And with respect to reasonable doubt, that's a burden that's met in courtrooms across the country every day. It's not proof beyond all doubt, it's not prove any doubt [*sic*], it's proof beyond a reasonable doubt. And you are the ones that determine what a reasonable doubt is."

The State also argued: "The defendant is trying to evade his responsibility for the actions that he committed ***. He is trying to evade his responsibility even after he admitted what happened on December 16 and 17, of 2010." She continued, "[h]e has decided that he doesn't want to face responsibility, he's decided that he wants to shrug any facing up or owning up to any of his actions on that day, just like he did in the video"; and "[h]e thinks he's going to slickly convince you that he wasn't the person [in the video]." Defense counsel did not object to any of these remarks.

¶ 26        The trial court instructed the jury:

> "The defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

The court further instructed the jury:

> "Closing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

In addition, "The fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict."

¶ 27        During deliberations, the jury sent a note asking: "Is it possible to see the written notes/reports from the officers?" Without objection, the court responded: "You have all of the evidence in this case. Please continue to deliberate."

¶ 28        The jury convicted Thompson of both burglary and theft.

¶ 29    In the motion for a new trial, the defense argued that Thompson was never identified as the perpetrator in the video and his verbal statements to the police were not recorded by either video or audio or reduced to writing.

¶ 30    In sentencing, the trial court merged the two counts into one burglary count, and imposed a sentence of 18 years' imprisonment as a mandatory Class X offender.

¶ 31                                  ANALYSIS

¶ 32                              Closing Arguments

¶ 33    Thompson argues he was denied a fair trial because the State's improper rebuttal argument attacked him for exercising constitutional rights by going to trial, confronting the State's witnesses, and putting the State to the burden of proof. Additionally, Thompson argues that the State minimized its burden and improperly urged the jury to invent its own definition of "beyond a reasonable doubt." Thompson did not include this issue in his supplemental motion for a new trial. Acknowledging that his trial counsel failed to object to the State's argument, Thompson asserts that we should review this issue under the plain error doctrine, both because the evidence was closely balanced *and* because the cumulative effect of the prosecution's remarks prejudiced him in the eyes of the jury. The State responds that Thompson forfeited these claims, and, forfeiture aside, the remarks properly respond to Thompson's closing argument and properly challenge the defense theory.

¶ 34    A defendant must object contemporaneously as well as in a posttrial motion to preserve issues for our review. *People v. Lewis*, 234 Ill. 2d 32, 40 (2009). Failure to take both steps results in procedural default, or forfeiture, of the issue. *Id.* Under the plain error doctrine, however, this court may excuse a procedural default and consider unpreserved error where: (1) the evidence is closely balanced so as to preclude argument that an innocent person was wrongfully convicted; or (2) the alleged error affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008). Our analysis initially considers whether error occurred, because in the absence of error, there can be no plain error. *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010). If we find error, then we proceed to consider whether either of the two prongs of the plain-error doctrine has been satisfied. The burden of persuasion rests with the defendant under either plain error alternative. *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009).

¶ 35    We first address Thompson's argument regarding the prosecutor's comments on the definition of reasonable doubt. Generally, a prosecutor has wide latitude in the content of a closing argument. *People v. Wheeler*, 226 Ill. 2d 92 (2007). The Illinois Supreme Court in *People v. Downs*, 2015 IL 117934, ¶ 24, stated, "In decisions dating back more than 100 years, this court has consistently held that the term 'reasonable doubt' should not be defined for the jury, that the term, in fact, needs no definition because the words themselves sufficiently convey its meaning." This restriction applies to both the trial court and counsel. *People v. Speight*, 153 Ill. 2d 365, 374 (1992). See *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) (" 'Reasonable doubt' must speak for itself. Jurors know what is 'reasonable' and are quite familiar with the meaning of 'doubt.' "). A trial court's instruction that the meaning of "reasonable doubt" is for jurors to determine is a correct statement of Illinois law.

¶ 36    Nevertheless, even where a prosecutor's comment exceeded the bounds of proper argument, the jury's verdict will not be disturbed "unless the remark caused substantial prejudice to the defendant, taking into account the content and context of the comment, its

relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. [Citation.]" *People v. Johnson*, 208 Ill. 2d 53, 115 (2003). In *Johnson* the supreme court found that the prosecutor's remark did not result in substantial prejudice to defendant or constitute a material factor in his conviction. *Id*. See also *People v. Carroll*, 278 Ill. App. 3d 464, 468 (1996) (finding no error where prosecutor stated, "[i]t's not beyond all doubt or any doubt, but beyond a reasonable doubt, a doubt that has reason behind it. That's not some mythical, unattainable standard that can't be met. That standard is met every day in courtrooms ***." (Internal quotation marks omitted.)); *People v. Trass*, 136 Ill. App. 3d 455, 467 (1985) (finding no error where prosecutor stated that standard is not "an insurmountable burden, some mystical thing" (internal quotation marks omitted)).

¶ 37    Thompson cites *People v. Mena*, 345 Ill. App. 3d 418, 426-27 (2003), where the prosecutor attempted to define beyond a reasonable doubt, arguing that the prosecution need not prove guilt beyond all doubt, and that juries across the country find evidence in other cases sufficient to meet the burden. But, *Johnson*, 208 Ill. 2d 53, is controlling even though the appellate court has held similar arguments improper (see *People v. Jones*, 241 Ill. App. 3d 228, 234 (1993); *People v. Frazier*, 107 Ill. App. 3d 1096, 1102 (1982); *People v. Martinez*, 76 Ill. App. 3d 280, 285 (1979)).

¶ 38    Therefore, we find no error. But, were we considering this issue under the plain error standard, no prejudice resulted where defense counsel's argument invited the prosecutor's remarks. During her closing, defense counsel mentioned "reasonable doubt" in several contexts. She argued: "The State has a burden to prove that it was indeed Mr. Thompson who stole those laptops. Not that it could have been him, it might have been him, probably could have been him." She went on: "No, that is not enough. They have to prove it beyond a reasonable doubt." She also suggested that had the police taken fingerprints from the door of the building, the jury "wouldn't have to assume anything because the law requires that the State prove their case beyond a reasonable doubt, not for you to guess and think that what the possibilities could have been [*sic*]." Regarding the lack of a signed *Miranda* waiver and written statement, she argued further: "we don't have anything in writing, we don't have anything on video, we don't have any signatures. Basically you are left here to guess. That is not proof beyond a reasonable doubt."

¶ 39    During rebuttal, the State may respond to statements made by defense counsel in closing argument that invite a response. *People v. Kliner*, 185 Ill. 2d 81, 154 (1998); *People v. Munson*, 206 Ill. 2d 104, 145 (2002). We consider comments in the proper context by examining the entire closing argument of both sides. *Kliner*, 185 Ill. 2d at 154; see *People v. Mendez*, 318 Ill. App. 3d 1145, 1152 (2001). Our review of the record reveals that defense counsel's argument invited the prosecutor's comments.

¶ 40    Moreover, the trial court instructed the jury on the presumption of innocence, that throughout the case the State has the burden of proving defendant's guilt beyond a reasonable doubt and that the fact that defendant did not testify must not be considered by the jurors in any way in arriving at a verdict. See *People v. Burman*, 2013 IL App (2d) 110807, ¶ 47 (improper comment plain error only when either so inflammatory that defendant could not have received fair trial or so flagrant as to threaten deterioration of judicial process). A trial court's instruction that closing arguments are not evidence and that arguments not based on the evidence are to be disregarded have been found to ameliorate any prejudice resulting from these types of comments. See *People v. Walker*, 230 Ill. App. 3d 377 (1992).

¶ 41    Thompson next argues that the prosecutor's rebuttal prejudiced him by arguing "The defendant is trying to evade his responsibility for the actions that he committed ***. He is trying to evade his responsibility even after he admitted what happened on December 16 and 17, of 2010." The prosecutor argued further: "[h]e has decided that he doesn't want to face responsibility, he's decided that he wants to shrug any facing up or owning up to any of his actions on that day, just like he did in the video"; and "[h]e thinks he's going to slickly convince you that he wasn't the person [in the video]."

¶ 42    This court in *People v. Herrero*, 324 Ill. App. 3d 876, 887-88 (2001) examined the prosecutor's statements during closing argument that the defendant was trying to "sucker in" the jury. For the prosecutor to comment on the defendant's decision to exercise his constitutional right to a jury was "outrageous, casting a shadow over the proceedings that simply cannot be ignored. Courts cannot countenance prosecutors invading the substantive rights of the accused by making comments that would penalize a defendant for the use of his constitutional rights. [Citation.]" *Id*. Additionally, the suggestion that alleged criminals like the defendant in *Herrero* are attempting to "sucker in" or dupe the jurors would have the tendency to improperly shift the focus of attention away from the actual evidence in the case. See *People v. Fluker*, 318 Ill. App. 3d 193, 202, 204 (2000) (without "pervasive misconduct of the prosecutor in rebuttal argument," the jury may have reached different result, therefore remarks constituted material factor in conviction).

¶ 43    We do not believe the comments deprived defendant of a fair trial despite suggesting that Thompson was "trying to evade his responsibility" after December 16 and 17, when he was arrested and gave statements to the police, and that he was "slickly" defending himself. The evidence here cannot be considered a "close case." Gillespie testified that in August 2010, two months before the burglary, he told Thompson to stay off campus and out of the buildings. In December 2010, he again encountered Thompson and detained him. Gillespie recognized Thompson from the surveillance videos. Thompson made incriminating statements to all three police officers who testified. Thompson was willing to speak to Tomescu after receiving his *Miranda* warnings. Tomescu asked Thompson if he could return the laptops, but Thompson told him "I don't have them, I sold them." The jury requested the "written notes/reports" from the police officers but this fact alone does not support the conclusion that the jury would have found differently absent the State's remarks.

¶ 44    Thompson urges us to consider the cumulative effect of the prosecutor's arguments, citing *People v. Scaggs*, 111 Ill. App. 3d 633, 636-37 (1982), where, due to the cumulative impact of the instances of prosecutorial misconduct, this court granted the defendant a new trial. *Scaggs* provides concrete examples of actions that constitute error. The question, however, of whether a defendant has been denied a fair trial, remains *sui generis*; with the result in each case decided on its own distinct set of facts and circumstances. The prosecutor's misconduct in *Scaggs* included: questioning the defendant regarding his living with a woman other than his wife; questioning the defendant regarding the frequency with which he carried a gun; questioning the defendant about his failure to call a witness coupled with the statement during closing argument that the witness did not "show" because he would not "lie" for the defendant; misstating the law relating to self-defense; and leading the jury to believe that "reasonable doubt" was a "mere *pro forma* detail." *Id*. The prosecutor's statement about reasonable doubt was:

"Every defendant that has ever been convicted in this building in this country has been convicted beyond a reasonable doubt whether it is stealing a bicycle or committing a murder. It does not put this man on a pedestal. It is not some impossible thing floating up there in the air. It is a burden that is met every day." (Internal quotation marks omitted.) *Id.*

Nevertheless, this court made "no finding as to whether, individually, the [five] instances of prosecutorial misconduct cited above warrant a reversal." *Id.*

¶ 45    In his reply brief, Thompson cites *People v. Buckley*, 282 Ill. App. 3d 81, 90 (1996), where the court found the evidence to be closely balanced, but could not say with a reasonable degree of certainty that the prosecutor's improper equating of recklessness and carelessness in the minds of the jury did not contribute to the defendant's guilty verdict, and, therefore, reversed the conviction and remanded for a new trial. There, if the defendant was found responsible for the victim's death, "whether [the defendant's] responsibility was based upon carelessness or recklessness was crucially important to a finding of criminal liability," and the prosecutor's statements improperly equating the two concepts only served to confuse that important distinction. *Id.* This case presents a much less serious scenario, and we cannot say that the guilty verdict resulted from prosecutor's remarks, even if improper.

¶ 46    Thompson quotes *People v. Richmond*, 341 Ill. App. 3d 39, 47 (2003), which stated that a prosecutor's words carry the authority of the State and admonished prosecutors to choose their words carefully. In that case, the prosecutor assumed the identity of the eight-year-old victim in opening statement, an unusual situation found improper under the circumstances, but not sufficient to constitute plain error. The remarks here hardly rise to the level of impropriety in *Richmond*. That said, while we consider defense counsel's conduct during closing argument as inviting a response, we also believe the State should have responded in "more measured" terms. Se*e Johnson*, 208 Ill. 2d at 113. The court's admonition in *People v. Herrero*, 324 Ill. App. 3d 876, 888 (2001), is well taken: "This is not to say that conduct such as that described here would be harmless in all situations." In *Herrero*, the court affirmed the defendant's conviction because it was not a close case on the evidence of guilt, finding that, even with the problems created by the prosecutorial misconduct, the strong evidence rendered the prosecutor's comments harmless.

¶ 47    Thus, we either find the statements of which Thompson complains on appeal a proper response to his closing argument or otherwise do not qualify as reversible error, and the cases cited by defendant do not compel a different result.

¶ 48                              Pretrial Request for *Krankel* Hearing

¶ 49    In *People v. Krankel*, 102 Ill. 2d 181 (1984), the supreme court held that the defendant should have had counsel, other than his originally appointed counsel, appointed to represent him at the posttrial hearing regarding his allegation that he had received ineffective assistance of counsel. *Id.* at 189. At the September 2011 status hearing, Thompson attempted to hand a document to the trial court. When the trial court advised that he should give the document to his attorney, Thompson's attorney stated the document was the arrest report she already had, and promptly explained that there was a warrant.

¶ 50    Thompson continued to insist that there was no warrant for his arrest. In October 2011, Thompson again raised his hand, and the trial court told him to talk to his lawyer. Thompson responded that she wasn't talking to him, but the trial court disagreed and told him the case

was set for trial. In January 2012, Thompson filed *pro se* a written request for a *Krankel* hearing, and in February a written petition for a writ of *habeas corpus*. After having been filed, the trial court never considered the motions.

¶ 51    Thompson filed *pro se* a pretrial motion for a *Krankel* hearing, asserting that a conflict existed between himself and his assistant public defender and asking the trial court appoint a new attorney to represent him. As the State points out, Illinois recognizes two types of conflicts of interest: *per se* and actual conflicts. *People v. Austin M.*, 2012 IL 111194, ¶ 80; *People v. Taylor*, 237 Ill. 2d 356, 374 (2010) (discusses difference between *per se* conflicts and actual conflicts of interest). A *per se* conflict will be found to exist where certain facts about a defense attorney's status engender, by themselves, a disabling conflict where: (1) defense counsel had a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) defense counsel contemporaneously represented a prosecution witness; and (3) defense counsel was a former prosecutor who had been personally involved in the prosecution of defendant. *Id.* An actual conflict generally, if not exclusively, involves joint or multiple representation. *Id.* at 375; *People v. Spreitzer*, 123 Ill. 2d 1, 17 (1988). In actual conflict situations, the accused need not prove prejudice in that the conflict contributed to the conviction, but it is necessary to establish that an actual conflict of interest adversely affected the lawyer's performance; in other words, a specific defect in his counsel's strategy, tactics, or decision making attributable to the alleged conflict of interest. *Taylor*, 237 Ill. 2d at 375-76. Nothing in the record establishes either type of conflict between Thompson and his counsel that would require new counsel.

¶ 52    At this juncture, we note that before trial Thompson also filed a *habeas corpus* petition asserting that the assistant public defender perjured herself by telling the trial court that there was an active warrant on this case. *Habeas corpus* relief depends on the seven grounds specified by the Code of Civil Procedure. 735 ILCS 5/10-124 (West 2012). These grounds fall into two general categories: (1) the prisoner was incarcerated by a court that lacked personal or subject matter jurisdiction; or (2) some occurrence subsequent to the prisoner's conviction entitled the prisoner to immediate release. *Hennings v. Chandler*, 229 Ill. 2d 18, 30 (2008). "A complaint for order of *habeas corpus* may not be used to review proceedings that do not exhibit one of these defects, even though the alleged error involves a denial of constitutional rights." *Beacham v. Walker*, 231 Ill. 2d 51, 58 (2008). Thompson's petition did not allege a legitimate ground for relief, and, further, nothing in the record indicates that Thompson pursued his motion.

¶ 53    Yet, Thompson asserts that the record does not rebut his claim when, in fact, the "putative document" on which he relies states "CERTIFIED STATEMENT OF CONVICTION/ DISPOSITION." The reference number on the certified statement is "11CR0100101," referring to this case. A handwritten note recites: "There is no warrant on this case." In the petition, Thompson asserted that he "[felt] like they [were] holding me because of my criminal background! And this case is a clear conspiracy." While creative, Thompson's attempt to obtain a release from pretrial incarceration fails on the facts. The trial court ruled on Thompson's motion that the jury would not hear about Thompson's initial detention as under an outstanding warrant issued in another matter for his criminal trespass to University property. The jury did hear that Gillespie detained Thompson, knew him from previous interactions, recognized him on the surveillance video, and arrested him. The record

demonstrates that both of Thompson's complaints–wrongful arrest and his counsel wrongfully allowed him to be incarcerated–were baseless.

¶ 54　　　　Thompson was first picked up on a warrant relating to a misdemeanor charge of criminal trespass to property at the University. He pled guilty to the charge a few weeks later. Before presenting evidence to the jury, the trial court ruled on motions *in limine* filed by both parties. The trial court excluded any testimony about the criminal trespass matter; *i.e.*, notifications he may have received, postings on campus, or any outstanding warrant that was served would be allowed at trial. The trial court also ruled that should Thompson testify, evidence of his convictions for burglary and attempted burglary in the University area would then be admissible.

¶ 55　　　　Finally, Thompson's ineffectiveness argument fails as premature. *Strickland* ineffectiveness claims cannot be resolved before trial and a *Krankel* hearing has been held inapposite in the context of pretrial complaints of ineffectiveness. *People v. Jocko*, 239 Ill. 2d 87, 92 (2010). In *Moore* and *Jocko*, the supreme court "explicitly applied *Krankel* only to posttrial motions." *People v. Washington*, 2012 IL App (2d) 101287, ¶ 19.

¶ 56　　　　Thompson's attempts to establish a conflict fail, and the record shows that Thompson's attorney represented him diligently and vigorously both before and at trial, presenting his defense and arguing strongly on his behalf. As in *Jocko*, the record rebuts the *Krankel* complaint.

¶ 57　　　　Affirmed.