2023 IL App (2d) 220252-U
Nos. 2-22-0252 & 2-22-0254 cons.
Order filed May 16, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 19-CF-30 |
| | ) ) | 19-CF-307 |
| ABRAHAM C. ARIAS, | ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   At defendant's sentencing for aggravated domestic battery and other offenses, the trial court improperly relied on psychological harm as an aggravating factor, because there was no evidence that such harm exceeded what was implicit in the offenses. Nonetheless, because the court did not place significant weight on this factor, a remand for resentencing is not warranted.

¶ 2    Defendant, Abraham C. Arias, pleaded guilty to three offenses involving, in some way, his ex-girlfriend, K.A. He pleaded guilty in case No. 19-CF-30 to aggravated domestic battery (strangulation), a Class 2 felony (720 ILCS 5/12-3.3(a-5), (b) (West 2018)). In case No. 19-CF-

307, he pleaded guilty to escape, a Class 3 felony (730 ILCS 5/5-8A-4.1(a) (West 2018)). In case No. 15-CF-785, he pleaded guilty to the Class 4 felony of violating the terms of probation imposed for a conviction of violating an order of protection where he had a prior domestic-battery conviction (720 ILCS 5/12-3.4(a)(1)(i), (d) (West 2018)).[1] Although the State agreed to drop several charges pending against defendant in case No. 19-CF-30 in return for his guilty plea, no agreement was made as to sentencing in any of the cases. At the sentencing hearing, the State presented evidence that, for the past several years, defendant had stalked, harassed, and violated orders put in place to protect K.A. and her family. The court, after noting that defendant was eligible for extended-term sentencing in all 3 cases (730 ILCS 5/5-5-3.2(b)(1) (West 2020)), sentenced defendant to 10 years' imprisonment for aggravated domestic battery; a concurrent term of 6 years' imprisonment for violating the terms of his probation; and a mandatory consecutive term of 5 years' imprisonment for escape (*id.* § 5-8-4(d)(7) (mandatory consecutive sentencing)). In imposing the sentence, the court cited, among other things, the psychological harm defendant's beating of K.A. caused not only her but also the children who witnessed the incident and the adults communicating with the children by phone during the incident. Defendant timely appealed. The two issues raised in this appeal are (1) whether there was adequate evidence to support the court's determination that defendant caused psychological harm to K.A. and the others, and (2) if it was improper for the court to consider psychological harm, whether the court placed significant weight on that factor, thus requiring this court to vacate defendant's sentence and remand this cause for a new sentencing hearing. For the reasons that follow, we affirm.

---

[1]Although defendant appealed in each case, the appeal in case No. 15-CF-785 was dismissed and, thus, is not before this court.

¶ 3                                    I. BACKGROUND

¶ 4      The three cases to which defendant pleaded guilty are interrelated. In case No. 15-CF-785, defendant pleaded guilty to violating an order of protection for K.A., which was imposed when he was previously convicted of domestic battery against her. Defendant was given probation but later violated its terms when he committed aggravated domestic battery against K.A. as charged in case No. 19-CF-30. He was released on bond in case No. 19-CF-30 and was placed on electronic home monitoring (EHM). While on EHM, he was charged with escape in case No. 19-CF-307 when, in violation of the EHM order, he left his home without permission, went to a liquor store, and drove around K.A.'s apartment complex.

¶ 5      The factual basis for the guilty plea in case No. 19-CF-30 revealed that defendant went to K.A.'s home on the morning of January 19, 2019. Defendant and K.A. started arguing at 7 a.m. During the argument, defendant pushed K.A. down; punched her face, head, and body; and grabbed her by the neck. With his hands around K.A.'s neck, defendant applied pressure, attempting to choke K.A. K.A. could not breathe. As a result, K.A. sustained injuries to her neck, head, and face. The police arrived at 5 p.m. and arrested defendant. The State also indicated that, at sentencing, it would present evidence that defendant was previously convicted of domestic battery.

¶ 6      Evidence presented at the sentencing hearing consisted mostly of 10 exhibits the State introduced without objection from defendant. The exhibits, many of which were group exhibits, included (1) an April 2013 police report indicating that defendant harassed K.A. by phone; (2) an August 2013 police report indicating that defendant battered K.A., harassed her by phone and texts, and stole from her; (3) K.A.'s 2013 petition for an order of protection against defendant, which evidently was granted; (4) an August 2013 police report indicating that defendant violated the 2013

order of protection; (5) various statements K.A. prepared in 2013 indicating that defendant, among other things, harassed K.A., spied on her and her family, and threatened to harm her and her family; (6) phone records indicating that defendant repeatedly phoned and texted K.A. from the middle of August 2013 to the beginning of September 2013; (7) an October 2013 order sentencing defendant to 180 days in jail and 36 months of probation for harassing a witness and domestic battery; (8) a November 2015 information charging defendant in case No. 15-CF-785 with violating an order of protection K.A. obtained against defendant; (9) a November 2015 police report indicating that defendant violated an order of protection K.A. obtained against defendant; (10) a March 2017 order indicating that defendant pleaded guilty in case No. 15-CF-785 to violating an order of protection and was sentenced to 180 days in jail and 30 months of probation; (11) a September 2018 police report indicating that defendant damaged K.A.'s property and would not leave her home; (12) a police report concerning the January 19, 2019, aggravated domestic battery; (13) the written statement K.A. gave police that day; (14) results of K.A.'s X-rays from the January 19, 2019, incident; (15) photographs taken of K.A. after the assault; (16) photographs taken of K.A.'s phone; and (17) a June 2019 police report indicating that defendant violated the terms of the EHM order.

¶ 7     In her statements to police about the January 19, 2019, incident, K.A. stated that she and defendant ended their relationship in September 2018. After the breakup, defendant would still stay with K.A. and help care for her children. He would also aid the family financially. K.A. attempted to meet new people after her relationship with defendant ended. Defendant was not pleased about that.

¶ 8    On January 19, 2019, defendant was intoxicated and went to K.A.'s home. K.A. was present with her children—A.A. (K.A.'s and defendant's three-year-old-daughter) and K.A.'s son (who was eight years old)—and defendant's two nephews, who were staying with K.A.

¶ 9    Defendant asked K.A. about her " 'phone boyfriends.' " K.A. dismissed defendant's query, and he snapped. Defendant punched K.A. about her body, said she deserved the beating because she was a slut and a whore, and strangled her.

¶ 10    When defendant released his grip on K.A.'s neck, she screamed as loudly as she could. The children came to see what was going on. They begged defendant to stop hurting K.A. Defendant made K.A. retrieve her cell phone and demanded that she unlock it. K.A. refused. Defendant became more enraged. He screamed at the children, " '[s]hut the f*** up.' " Defendant then sent the children to K.A.'s son's room.

¶ 11    Turning his attention back to K.A., defendant demanded that K.A. unlock her cell phone and identify her boyfriends. Defendant threatened to "shove the 'phone up [her] ass' " if she refused. When K.A. did not comply, defendant kicked and pinched K.A.'s genital area and attempted to vaginally assault her with her cell phone. K.A. kicked defendant away from her. Defendant then threw K.A.'s cell phone at her, hitting her face and cutting her nose. Defendant threw K.A.'s cell phone a second time, and it shattered.

¶ 12    While defendant battered K.A., defendant's nephews called their parents. The nephews said they wanted to go home. They asked for help but were too scared to say what was happening. Subsequently, the nephews' mother—defendant's sister—arrived. She attempted to leave the home with the children and K.A. Defendant asserted that everyone but A.A. could leave. Defendant then shoved A.A. into K.A.'s bedroom. A.A. began crying and pleading to leave the home.

¶ 13    Defendant's sister removed all the children from the home. K.A. remained behind, as she was too afraid to move. Once defendant and K.A. were alone, defendant told K.A., " 'I'm gonna f*** you.' " Fearing that the beating would continue if she did not comply, K.A. remained motionless while defendant assaulted her. When K.A. began to cry, defendant became angrier and positioned K.A. so that he could penetrate her from behind. When the assault ended, K.A. got away from defendant.

¶ 14    In her statements to the police, K.A. told them that defendant could be helpful and loving, but he had anger issues and became dangerous when he drank. Defendant's malicious behavior caused K.A. to become anxious all the time. Her children were frightened of cars around their home, believing that it might be defendant.[2] K.A. expressed her fear of defendant, her need to obtain help for herself and her children, and her desire to move on with her life and live in peace.

¶ 15    Other exhibits admitted at sentencing confirmed that K.A.'s children and nephews witnessed defendant beating K.A. on January 19, 2019. Like K.A., all the children were frightened of defendant, who repeatedly threatened to kill K.A. during the beating. A.A. told police that she was mad at defendant and wanted to throw his things out of the home. K.A.'s son told police that he was scared defendant would return. K.A. told police that defendant has threatened to kill her in the past, and she is afraid that defendant will get out of jail and harm her. When defendant's sister arrived to remove K.A. and the children from the home, she asked K.A. if she was all right, and

---

[2]Defendant had previously violated orders of protection. In case No. 19-CF-307 (charging defendant with escape), defendant located K.A. and her children even though she had not disclosed her address.

defendant yelled at her to mind her own business. Defendant's sister told police that defendant would violate any order of protection that K.A. obtained.

¶ 16    The exhibits also revealed that defendant began stalking and harassing K.A. in 2013, when she was 19 and defendant was 20. Defendant sent K.A. numerous harassing texts and made repeated phone calls that would evolve into threats when K.A. did not respond. Defendant's conduct led to K.A. obtaining orders of protection against defendant. Right after defendant was served with the first order of protection, he sent K.A. a photograph of a woman lying on the floor in a pool of blood with her jaw removed. Defendant warned K.A. that this would happen to her if she were not careful. Defendant's conduct led to K.A. always looking around for defendant wherever she went. Defendant's family and K.A.'s friends were aware of how defendant became violent and abusive when he drank.

¶ 17    Photographs admitted showed injuries to K.A.'s face, neck, and arms after the January 19, 2019, incident. In addition, K.A.'s medical records revealed that K.A. sustained a fractured rib. Photographs also showed that K.A.'s cell phone, while intact, was shattered.

¶ 18    During closing arguments at sentencing, the State argued that K.A. and her children suffered psychological harm. Defendant responded that the court should not consider psychological harm, as K.A. never testified or provided a victim impact statement to support such a finding. Defendant claimed that, without such evidence, any argument that defendant caused psychological harm was speculative.

¶ 19    In sentencing defendant, the court noted that it considered, among other things, the evidence admitted at sentencing, which it found relevant and reliable. The court found that no mitigating factors applied. See 730 ILCS 5/5-5-3.1 (West 2020). In aggravation, the court found that (1) defendant's conduct caused or threatened serious harm, (2) he had a history of prior

delinquency and criminal activity, (3) his criminal history began when he was 15 years old and continued for the next 11 years, (4) a sentence of imprisonment was necessary to deter others from committing the same types of crimes, (5) defendant was convicted of a felony he committed while he was serving probation for a prior felony, and (6) defendant was convicted of a felony while he was serving probation for a prior felony. See *id.* § 5-5-3.2(a)(1), (a)(3), (a)(7), (a)(12). The court also found that (7) defendant expressed no remorse; (8) he continued to reoffend despite completing intensive probation and classes to address his anger and abusive tendencies; (9) he was provided alcohol abuse treatment and other opportunities for rehabilitation, which ultimately failed; (10) his professed desire to seek further treatment was insincere; and (11) he repeatedly ignored orders of protection and the EHM order put in place to protect K.A. "Most disturbing to the [c]ourt [was] that the defendant's serious criminal conduct primarily target[ed] one person, [K.A.]" The court observed that defendant continued to target K.A. despite her constant pleas and efforts to protect herself from defendant. Moreover, during these encounters, defendant would break K.A.'s property or the property she used for her job.

¶ 20    In addressing the January 19, 2019, aggravated domestic battery, the court observed that "[defendant] assaulted [K.A.] at her home in the presence of [her] own children and two other children." Defendant "hurt [K.A.] physically [and] without mercy[.]" Defendant's actions were "forceful," "brutal," and resulted in visible injuries to K.A. The court "believe[d] and [could] infer from the evidence submitted by the State that [K.A.] was thoroughly emotionally traumatized." Moreover, the court determined that "the children who witnessed the assault were traumatized[,]" as were the "other individuals who[m] the children were apparently communicating with, [and who] were aware that [K.A.] was being assaulted[.]"

¶ 21    After he was sentenced, defendant moved the trial court to, among other things, reconsider his sentence. Nowhere in the motion did counsel argue that the court improperly considered any psychological harm defendant may have caused. Counsel neither filed a certificate under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) nor did the record otherwise indicate compliance with the rule. The court denied the motion, defendant appealed, and this court remanded the case for strict compliance with Rule 604(d).

¶ 22    On remand, counsel filed a Rule 604(d) certificate and an identical motion to reconsider. At the hearing, counsel stood on the motion. Accordingly, defendant made no argument that the trial court improperly considered any psychological harm defendant may have caused. The court denied the motion. This timely appeal followed.

¶ 23                                II. ANALYSIS

¶ 24    Defendant argues on appeal that the trial court erred in considering any psychological harm he may have caused K.A. and others, because the State presented no evidence of psychological harm greater than that implicit in the offenses. Defendant also argues that we must vacate his sentence and remand the cause for resentencing because the court placed significant weight on this psychological harm.

¶ 25    Before considering these issues, we note that defendant failed to raise either issue in the trial court. Claims challenging a defendant's sentence that are not raised at sentencing and in a postsentencing motion are forfeited. See *People v. Johnson*, 2021 IL App. (2d) 180775, ¶ 12. Nevertheless, as defendant observes, we may review forfeited sentencing issues under the plain-error rule. To show plain error in the sentencing context, the defendant must establish that a "clear or obvious error occurred" at sentencing and "either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing

hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Defendant argues that plain-error review is proper under either prong.

¶ 26    Defendant bears the burden of establishing plain error under either prong of the plain-error rule. *People v. Thompson*, 2015 IL App (1st) 122265, ¶ 34. As is true in every case involving plain-error review, we first consider whether error arose at all, because in the absence of error there can be no plain error. *Id.* If we find error, we consider whether either of the two prongs of the plain-error rule has been satisfied. *Id.* Whether plain error arose is a question of law that we review *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010).

¶ 27    On appeal, defendant takes issue with the severity of his sentence. "Imposition of a sentence is normally within a trial court's discretion [citation], and there is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, such that the trial court's sentencing decision is reviewed with great deference." *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. "The presumption is overcome only by an affirmative showing that the sentence imposed varies greatly from the purpose and spirit of the law or manifestly violates constitutional guidelines." *Id.*

¶ 28    In imposing a sentence, courts must "make determinations based only upon the evidence presented." *People v. Steidl*, 177 Ill. 2d 239, 266 (1997). A court cannot rely on an aggravating factor in imposing a sentence when evidence supporting that factor was never presented. See *People v. Zapata*, 347 Ill. App. 3d 956, 966 (2004). Thus, while we most often review a court's sentencing order for an abuse of discretion, we review *de novo* whether the trial court "relied on an improper factor in imposing a sentence." *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8.

¶ 29    Defendant claims that the trial court erred in considering the psychological harm he may caused K.A., the children, and the family members whom defendant's nephews notified while

defendant was beating K.A. Many cases have held that the psychological harm inflicted on the victim is a proper factor to consider in aggravation. See *People v. Kerwin*, 241 Ill. App. 3d 632, 636 (1993); *People v. Nevitt*, 228 Ill. App. 3d 888, 891-92 (1992); *People v. Ulmer*, 158 Ill. App. 3d 148, 149-51 (1987); *People v. Lloyd*, 92 Ill. App. 3d 990, 995-96 (1981); *People v. Fisher*, 135 Ill. App. 3d 502, 506 (1985); *People v. Burton*, 102 Ill. App. 3d 148, 153-54 (1981). Although these cases concern psychological harm to child victims of sexual offenses, we fail to see why courts should not consider psychological harm to adult victims of domestic violence. In fact, courts in other states have considered psychological harm to adult victims of domestic violence as an aggravating factor at sentencing. See, *e.g.*, *State v. Williams*, Nos. 79590, 79591, 2002 WL 253872, at *3 (Ohio Ct. App. Feb. 21, 2002) (sentence justified in part by psychological harm ex-wife suffered when the defendant, the ex-husband, who had committed prior acts of domestic violence against her, broke into her home intending to kill her and the couple's children). Likewise, we believe that the psychological harm suffered by family members of such victims is a proper aggravating factor for a court to consider at sentencing. See *Gober v. State*, 163 N.E.3d 347, 355 (Ind. Ct. App. 2021) (where, due to the defendant's neglect, two of her children died from a house fire, the trial court properly imposed consecutive sentences in part due to the psychological harm the victims' deaths caused the child who survived the fire; the defendant did not "cite to any authority that supports her proposition that the trauma to one victim may not be used to order consecutive sentences when there are other victims [of the crime]"); *People v. Falco*, 470 P.3d 688, 693-94 (Colo. 2016) (noting lasting effects of psychological harm on children who are exposed to domestic abuse).

¶ 30    Defendant argues that, regardless of whether psychological harm is a valid aggravating factor, specific evidence of psychological harm is absent in this case. Defendant suggests that

specific evidence of psychological harm must be presented via the victim's testimony, a victim impact statement, or evidence of mental health treatment. Defendant claims that, because the State presented no such evidence here, the State did not establish psychological harm beyond what is implicit in the offenses. See *People v. Maas*, 2019 IL App (2d) 160766, ¶ 83 ("A factor implicit in the offense of which a defendant has been convicted cannot be used as an aggravating factor.").

¶ 31    In support of his argument, defendant relies on *People v. Calva*, 256 Ill. App. 3d 865 (1993). There, the defendant pleaded guilty to six counts of aggravated criminal sexual assault committed against A.G., a six-year-old girl. *Id.* at 867. At sentencing, the trial court remarked that the defendant had "psychologically injured and scarred A.G. for life." *Id.* at 869. On appeal, the court found that it was improper for the trial court to consider any psychological harm to A.G. *Id.* at 875. The court stated:

> "As for psychological harm, cases have held that it can be inferred that a child who is the victim of sexual assault has sustained psychological damage. [Citation.] However, no evidence was offered to show any psychological harm to A.G. Therefore, it would seem that the degree of any psychological harm used in aggravation would be minimal, as it would be limited to the degree of harm inherent in any aggravated sexual assault of a child."
> *Id.*

¶ 32    Here, unlike in *Calva*, there was some evidence presented from which the trial court could infer that the January 19, 2019, incident caused psychological harm to K.A., the children who witnessed the battery, and the family members with whom defendant's nephews communicated during the battery. However, we are troubled by the fact that (1) the evidence did not suggest that the children and defendant's family members suffered psychological harm greater than that implicit in cases of domestic violence, and (2) a significant amount of the evidence of

psychological harm K.A. and her children suffered was connected to events occurring months or years before January 2019. Moreover, although certainly not required, the evidence of psychological harm consisted of neither psychological examinations of K.A., the children, and defendant's family members nor reports from the children's schools or daycare centers suggesting that they suffered detrimental effects from the January 2019 incident. While we recognize that evidentiary standards at sentencing are less rigid than those imposed at trial (*People v. Rose*, 384 Ill. App. 3d 937, 940 (2008)), and, thus, a "court may search anywhere within reasonable bounds for other facts which may serve to aggravate or mitigate the offense" (internal quotation marks omitted) (*People v. Harris*, 375 Ill. App. 3d 398, 408 (2007)), we are reluctant to conclude here, without more direct and recent evidence, that the psychological harm K.A. and the others suffered was greater than that inherent in domestic violence cases.

¶ 33   That said, even assuming the psychological harm defendant caused was an improper aggravating factor, the trial court placed minimal weight on this factor. Thus, we will not vacate defendant's sentence and remand for a new sentencing hearing.

¶ 34   In deciding whether significant weight was placed on an improper factor, we consider:

> "(1) whether the trial court made any dismissive or emphatic comments in reciting its consideration of the improper factor; and (2) whether the sentence received was substantially less than the maximum sentence permissible by statute." *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 18.

¶ 35   Here, we observe that the trial court's rationale for the imposed sentence consists of almost seven pages. In these pages, the court found no mitigating factors applied, and it addressed the several statutory aggravating factors that did apply. The court also commented on defendant's lack of remorse, substance abuse problems, failed attempts at rehabilitation, and the prior crimes

defendant committed against K.A. "Most disturbing" to the court was not that defendant caused anyone psychological harm, but that defendant repeatedly targeted K.A. The court's remarks about the psychological harm defendant caused consisted of only three statements made in the middle of the court's ruling. Given this, the court certainly did not place significant weight on any psychological harm the court believed defendant caused.

¶ 36    Second, aside from the trial court not emphasizing the psychological harm defendant caused, his sentences—10 years for aggravated domestic battery and 5 years for escape—were less than the maximum terms. See *id.* As the court observed, defendant was eligible for extended-term sentencing in both cases. See 730 ILCS 5/5-5-3.2(b)(1) (West 2020) (extended term may be imposed when the defendant is convicted of a felony and within the last 10 years was convicted of the same or greater class felony). He received the minimum extended-term sentence for escape, a Class 3 felony (*id.* § 5-4.5-40(a) (Class 3 extended-term sentence is between 5 and 10 years), and a sentence 4 years less than the maximum extended term (or 6 months less than the middle of the range) for aggravated domestic battery, a Class 2 felony (*id.* § 5-5-4.5-35(a) (Class 2 extended-term sentence is between 7 to 14 years).

¶ 37    Given the insignificant weight the trial court put on this factor, we cannot conclude that defendant's sentences for aggravated domestic battery and escape were improper. See *People v. Glenn*, 363 Ill. App. 3d 170, 178 (2006) (remand for resentencing not warranted when "it appears from the record that the weight placed upon [the improper aggravating] factor was so insignificant that it did not lead to a greater sentence").

¶ 38    Because we determine that no error arose when the trial court sentenced defendant, we necessarily cannot find plain error. See *Johnson*, 238 Ill. 2d at 485. Thus, defendant's forfeiture stands.

¶ 39　　　　　　　　　　　　　III. CONCLUSION

¶ 40　　For these reasons, we affirm the judgment of the circuit court of De Kalb County.

¶ 41　　Affirmed.